# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**March 05, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

KIMBERLEY DIANE SNYDER SIEGEL )
                        )
      Plaintiff/Appellee,        )     Shelby Chancery No. D-25669-3
                        )
**v.**                                  )
                        )     Appeal No. 02A01-9708-CH-00198
**DAVID A. SIEGEL,**              )
                        )
      Defendant/Appellant.     )
                        )

## APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE

### THE HONORABLE C. NEAL SMALL, CHANCELLOR

For the Plaintiff/Appellee:

Kimberley Diane Snyder Siegel, Pro Se
Cordova, Tennessee

For the Defendant/Appellant:

Hal Gerber
Memphis, Tennessee

**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a divorce case. The trial court awarded most of the marital property to the wife and most of the marital debt to the husband, and ordered the husband to pay rehabilitative alimony and child support as well as a portion of the wife's attorney's fees. The husband appeals. We affirm the division of marital property and debts and the award of attorney's fees, and reverse and remand on the issues of alimony and child support.

Kimberley Diane Snyder Siegel ("Wife") and David A. Siegel ("Husband") were married in 1989. Two children were born during the eight year marriage, Joshua and Stephanie, who were ages five and three at the time of trial. Wife was thirty-one and Husband was thirty-six years old at the time of trial. Husband is a licensed attorney. Wife has a BS degree in Education. During the parties' marriage, Wife was a full time homemaker who took care of the minor children. On May 25, 1995, Wife filed a complaint for divorce in the Chancery Court of Shelby County. Husband filed a counter-complaint for divorce on June 22, 1995. Wife sought full custody and Husband sought joint custody of the children. After the parties separated, Wife worked as a merchandiser with Nabisco Foods until the entire division was terminated. At the time of trial, Wife was unemployed.

The divorce proceedings were protracted and contentious. During the pendency of the divorce proceedings, Wife filed four petitions for scire facias. These petitions alleged that Husband violated court orders by failing to pay temporary child support, failing to reimburse Wife for medical expenses not covered by insurance, failing to pay attorney's fees for representation of the children's interests, failing to maintain insurance coverage, and failing to pay the mortgage on the parties' residence, which was ordered as temporary alimony. Husband filed one petition for contempt, alleging that Wife interfered with Husband's visitation with the children, used threatening and abusive language, and struck Husband. Husband had two pre-trial substitutions of counsel and one post-trial substitution and represented himself for a short time. Wife had one pre-trial substitution of counsel and represents herself on appeal.

From 1992 until July, 1996, Husband was a member of the Memphis law firm of Wampler, Pierce and Siegel. On July 16, 1996, he began a solo practice. Before starting his solo practice, Husband averaged approximately $2759 per month in net income from Wampler, Pierce and Siegel. Husband's total gross draws from his solo practice from July 16, 1996 to December 31, 1996 were $23,937.97, or $4787.59 per month. In addition, Husband received approximately $3107.53 over the five month period, which was not included in the $23,937.97 figure. The parties disputed

whether this should be included in Husband's earnings. Wife asserts that much of this was for personal expenses which should have been included in Husband's draws. Husband also had net income from the band he played in of $250 per month.

The marital debts were disputed at trial. Wife testified at trial that at the time of the parties' separation, the marital debts were approximately seven thousand dollars. Husband originally claimed approximately eight thousand dollars of joint marital debt, although later he stated that this figure was a mistake. By trial, however, Husband was claiming over forty thousand dollars of debt. Wife testified that Husband incurred this excess debt post-separation for his own living expenses. Husband admitted that at least some of the debt he owed to his firm was due to his erratic office hours and poor attendance. Husband, however, testified that Wife transferred ten thousand dollars of joint credit card debt to an account solely in Husband's name and that $10,700 of debt owed to his old law firm was used for living expenses during the marriage.

Husband initially indicated an intent to litigate the custody of the parties' children. Consequently, counsel for Wife prepared to litigate the issue of custody. On the first day of trial, however, Husband informed Wife that he was not going to litigate custody and stipulated that Wife would have custody.

The trial court entered a final decree of divorce on March 26, 1997 in favor of Wife on the grounds of inappropriate marital conduct. The trial court gave Wife custody of the two minor children. Husband was ordered to pay $1275 per month in child support, $1097 per month rehabilitative support for twenty-four months, and $25,000 in attorney fees to Wife. The trial court based the child support award on Husband's gross income for the final five months of 1996 when Husband was engaged in his solo practice, reasoning that Husband's prior employment at Wampler, Pierce and Siegel was not representative of his income. The trial court found that Husband did not apply himself when he was working with Wampler, Pierce and Siegel because of the large amount of time he spent fighting the divorce. It was undisputed that Husband earned $23,937.97 during the last five months of 1996. To this amount, the trial court added $3107.53 for expenses not included in the $23,937.97 figure. Accordingly, the trial court calculated Husband's monthly gross income from his law practice to be $5409.10. After adding $250 per month for Husband's income from his band, the trial court concluded that Husband's gross monthly income for child support purposes was $5659.10. In support of the award of attorney's fees, the trial court found that Husband "went

2

overboard" while he was representing himself and "insisted on litigating every matter." The trial court found that Husband's conduct necessitated several contempt petitions that would not otherwise have been necessary.

The trial court also ordered Husband to maintain health insurance for the children and a $150,000 life insurance policy on himself. The trial court retained the parties' prior division of personal property except that it awarded the minor children a bedroom suite, armoire, and piano, and awarded Husband his drum set and camcorder. The trial court also awarded Husband his law practice, his pension, and $1500 cash. Wife was awarded the marital residence. The Court reasoned that the majority of the down payment came from Wife's side of the family and that she needed a decent home in which to raise the children. In addition, Wife was awarded two hundred twenty-five shares of Odwalla, Inc. stock, and one hundred shares of Telular stock. Responsibility was given to Husband for all of the parties' marital debt with the exception of the remaining balance of $13,500 on Wife's car and the remaining balance of $95,000 on the marital residence. The trial court reasoned that Wife had no way to pay the debts and that Husband went "overboard" in running up debts during the parties' separation.

On June 9, 1997, approximately three months after the trial, Husband filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Western District of Tennessee. On January 9, 1998, Husband and the bankruptcy trustee entered into an agreed order, in which Husband relinquished all ownership interest in the marital home and the personal property located therein. The order allowed Wife, as the secured creditor, to assume full ownership of the property. Wife asserts that, subsequent to the agreed order, Husband quitclaimed the parties' marital residence to her as well as his interest in the parties' Odwalla and Telular stocks.

On appeal, Husband disputes the trial court's distribution of marital property, the computation of the rehabilitative alimony and child support, and the award of attorney's fees to Wife. Wife asserts that Husband's appeal is frivolous and asks this Court to award her attorney's fees and expenses incurred for this appeal.

Husband first argues on appeal that the trial court erred in its division of marital property. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. *See Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. App. 1996). The trial court's distribution of marital property will be reviewed *de novo* and will be presumed correct unless the evidence preponderates otherwise. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. App. 1991); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. App. 1984).

Husband asserts on appeal that Wife received eighty-five percent of the marital assets, while he received only fifteen percent. He argues that the trial court's division of marital property does not properly take into account the factors listed in Tennessee Code Annotated § 36-4-121(c).[1] Husband notes that the parties were only married for six years when they separated, the parties are young, educated and employable, the parties have equal expenses and assets, and neither party contributed to the educational needs of the other. Husband asks this Court to order the sale of the marital residence when the youngest child turns eighteen or, in the alternative, that Wife be ordered to give Husband his equitable share when the youngest child turns eighteen, based on the value of the residence at the time of the divorce decree. Husband requests that all other assets be awarded to him except for Wife's car.

---

[1] The factors to be considered in dividing marital property are:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party; and
(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996).

Wife argues that Husband gave up all interest in the marital residence and parties' stocks when he filed bankruptcy. Wife contends that the Agreed Order Granting Relief from the Automatic Stay and Abandoning Property filed in the bankruptcy action relinquished to Wife, as the secured creditor, all of Husband's rights in any real and personal property located at the parties' marital residence. Wife points out that, subsequent to this order, Husband quitclaimed the marital residence and the stocks to her. Wife also argues that the equity in Husband's law practice offsets the equity in the marital residence and that these two assets constitute the majority of the parties' property. Finally, Wife asserts that Husband failed to put before the trial court his request that the court order the marital home sold when the parties' youngest child reaches eighteen years old.

Husband points to no place in the record in which he raised to the trial court his current request that the marital home be sold when the youngest child turns eighteen. Therefore, the issue may not be raised on appeal. *See Tennesee Dep't of Human Serv. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. App. 1996).

The trial court reasoned that it should award Wife the marital residence because "the majority of the down payment came from her side of the family" and because of her need for an appropriate home in which to raise the children. Tennessee Code Annotated § 36-4-121(d) directs that "special consideration" be given to the party with custody of minor children when awarding the marital residence. Wife was a homemaker during the parties' marriage and, except for a short period of employment at Nabisco after the parties separated, has not worked since before the birth of the parties' first child. Clearly Husband has greater income and earning potential than Wife, as well as a greater ability to accumulate assets in the future. *See* Tenn. Code Ann. § 36-4-121(c)(4) (1996). An equitable division of marital property need not be an equal division of the property. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. App. 1991). Considering the record as a whole, the evidence does not preponderate against the trial court's division of the parties' marital property.

The record on appeal contains Husband's post-divorce filings in the United States Bankruptcy Court. In the bankruptcy preceding, Husband gave up all his interest in the parties' marital residence and personal property therein. Wife claims that he should therefore be precluded from raising these issues on appeal. We need not consider the bankruptcy proceedings in this case,

however, because we find that the evidence preponderates in favor of the trial court's award of the marital residence to Wife.

Husband next asserts that the trial court erred in ordering Husband to pay all of the parties' marital debt except for the remaining balance on Wife's car and the remaining mortgage on the marital residence. This ruling, Husband asserts, forced him into bankruptcy. In a divorce proceeding, trial courts have broad discretion in dividing the marital estate. As with dividing marital property, broad discretion is accorded to a trial court's division of marital debt. *See Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. App. 1996).

From the parties' testimony at trial, it appears that the marital debt increased significantly after the separation. Wife testified that Husband incurred this post-separation debt for his own living expenses. Husband admitted that at least some of the debt he owed to his firm was due to his erratic office hours and poor attendance. Husband, however, testified that approximately twenty thousand dollars was joint debt used for expenses during the marriage. The trial court determined that all of the debt was marital debt and, therefore, that it was unnecessary to ascertain which party incurred the debts. According to the trial court, Wife had no means to pay off any of the debt. Furthermore, "Mr. Siegel . . . went overboard in running up debts in the last several months before this divorce was heard."

The factors to be considered in apportioning marital debt are: "(1) which party incurred the debt and the reason for the debt, (2) which party benefitted from the loan, and (3) which party is better able to assume the debt." *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 624 (Tenn. App. 1989) (citations omitted). The record contains evidence indicating that the majority of the debts were incurred by Husband for his benefit. Clearly Husband is better able to pay the debt. Under these circumstances, the evidence does not preponderate against the trial court's division of the parties' debts. The decision of the trial court dividing the marital property and debts is affirmed.

Husband next contends that the trial court erred in its computation of rehabilitative alimony and child support. The trial court is afforded wide discretion concerning the award of alimony because the determination of the amount and duration is a factual issue based on the factors in Tennessee Code Annotated § 36-5-101(d)(1).[2] *See Herrera*, 944 S.W.2d at 387-88. The trial court's

_____

[2]         These factors are:

6

findings regarding alimony should be reversed only in instances in which this discretion "has manifestly been abused." ***Hanover v. Hanover***, 775 S.W.2d 612, 617 (Tenn. App. 1989); *see also Herrera*, 944 S.W.2d at 388.

An award of child support is reviewed in accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure with a presumption of correctness as to factual findings. ***See Ford v. Ford***, No. 02A01-9507-CH-00153, 1996 WL 560258, at *2 (Tenn. App. Oct. 3, 1996). There is no presumption of correctness for the trial court's conclusions of law. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). The factors considered in calculating child support awards are found in guidelines published by the Tennessee Department of Human Services. ***See*** Tenn. Comp. R. & Regs. 1240-2-4-.03 (1994). Under these guidelines, child support is based on a percentage of the non-custodial parent's net income. ***See*** Tenn. Comp. R. & Regs. 1240-2-4-.03 (1994). Thus, the determination of the amount of both alimony and child support are based, at least in part, on the trial court's finding as to the party's net income or "earning capacity."

Husband argues that the amounts of alimony and child support awarded were excessive based

---

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d) (Supp. 1998).

on the trial court's incorrect determination of his income. The trial court based its calculations of alimony and child support on the last five months of 1996. The trial court accepted Wife's figures showing Husband's gross income was $5659.10 per month during the last five months of 1996. As noted above, Husband's income increased considerably during the last five months of 1996 when he left his law firm and began practicing as a solo practitioner. Husband asserts that the increase in his compensation during the last five months of 1996 was due to two significant contingent fee settlements. He argues that the trial court erred in calculating alimony and child support based only on his increased income from the last five months of 1996 rather than his average income over the entire year of 1996. In support of this argument, Husband cites the criteria for deviation from the Tennessee Child Support Guidelines:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment whichever is appropriate, until the current support order is entered. This amount must be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party.

Tenn. Comp. R. & Regs, Rule 1240-2-4-.04(1)(e) (amended Oct. 1997). Wife argues that Husband's earnings during the last five months of 1996 accurately represent his current and future earnings and, thus, are the proper basis for alimony and child support.

The trial court based its calculations on the last five months of 1996 because it concluded that Husband was not making as much during the first few months of 1996 as he was capable of making. The trial court stated, "As a matter of fact, it may very well be that one reason his income appeared so low is that he didn't work at making money, he worked at fighting this divorce." Testimony at trial indicated that, during the first part of 1996 at his law firm, Husband would often come into work at 10:00 a.m. and leave at 2:00 p.m. The trial court determined, therefore, that Husband's income prior to his switch to private practice was not representative of his future earning capacity.

The guidelines instruct courts to average income over the last two years when entering an initial child support order. *See Mayfield v. Mayfield*, No. 01A01-9611-CV-00501, 1997 WL 210826, at *6 (Tenn. App. Apr. 30, 1997); *see also Yates v. Yates*, No. 02A01-9706-CH-00122, 1997 WL 746377, at *5 (Tenn. App. Dec. 4, 1997); Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(e) (amended Oct. 1997). "Under the Child Support Guidelines, this average amount is presumed to be correct unless it is rebutted by either party." *Yates*, 1997 WL 746377, at *5. Wife sought to rebut

8

this presumption by emphasizing that Husband's income increased drastically after his change to solo practice.

Considering the record as a whole, it appears that the trial court erred in basing its calculation of alimony and child support only on Husband's income for the last five months of 1996. While Husband clearly underperformed while at Wampler, Pierce & Siegel, it is also undisputed that the greater earnings in the latter half of 1996 were at least partially due to two large settlements. There is no indication whether Husband will continue to receive large settlements on a regular basis. However, a calculation of child support based on Husband's earnings during the last two years, as indicated under the child support guidelines, would be erroneous under the facts and circumstances of this case. It is undisputed that Husband did poorly while at his former law firm. Husband also testified that his overhead decreased when he went into solo practice. If the last two years of Husband's income were utilized to calculate child support, unfair emphasis would be placed on his prior lower earnings. Based on the entire record, it appears that Husband's earnings for the entire twelve months of 1996 best reflect his income and earning capacity for the purpose of determining child support and alimony. We reverse the trial court's award of alimony and child support and remand for a determination of alimony and child support based on Husband's income for the entire year of 1996. On remand, the income considered should include the compensation from Wampler, Pierce & Siegel, the compensation from Husband's solo practice, the personal expenses that Husband failed to include in his draw from his solo practice, and Husband's income from his band.

Finally, Husband argues that the trial court erred in ordering him to pay a portion of Wife's attorney's fees. Of Wife's total attorney's fees of over $43,000, Husband was ordered to pay $25,000. The trial court is afforded great discretion concerning whether to award attorney's fees in a divorce case. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). On appeal, the trial court's decision is normally not reversed except upon a showing of an abuse of that discretion. *Id.; see also Long v. Long*, 957 S.W.2d 825, 827 (Tenn. App. 1997).

9

Husband asserts that the award of attorney's fees was excessive because the hourly charges were excessive for routine matters and the time plaintiff's counsel spent on the case did not bear a reasonable relation to the size of the estate. Husband provided two affidavits from attorneys in the community supporting his contentions. Husband acknowledges that his request for custody of the parties' children was not dropped until immediately before the trial, but argues that, because discovery was not pursued on this issue, Wife "could not possibly have thought that custody was a real issue."

Prior to trial, the trial court reserved attorney's fees to Wife on several pre-trial matters, including her first three petitions for scire facias and Husband's failure to comply with discovery requests. The trial court explained its final award of attorney fees to Wife as follows:

> In this case, the court would be inclined to make the attorneys fees frankly very low considering the fact that there was not much to really fight over in the way of property and debts and all and, you know, you need only so much time to decide who is going to have custody and things like that, but in this case, frankly, Mr. Siegel I think just went overboard, especially while he was representing himself. He insisted on litigating every matter. He in effect leads the court to at least require what I would call a fair, but maybe moderate amount of fees to be paid by him to his wife's attorney.
> There are three things in addition to the usual that the court has to weigh in setting fees. There are three things in this case that the court would comment on. Number one, I have never seen affidavits from what you might call pillars of the legal community of this city that has put in writing an opinion of what the fees ought to be as we have in this case.
> Number two, overkill. I think from the very first hearing the court expressed right in open court its great concern with Mr. Siegel's conduct and how it was bound to affect the outcome of the divorce and the rulings of the court, so that certainly I'm sure he got the point and he finally did get an attorney, but, then, on the other hand, you just don't need to prove things that are not in dispute or that the court's already pretty well ruled on. There is just no need in it. If Mr. Siegel hadn't been so difficult to deal with, even from the court's standpoint, that [sic] the fees in a case with no more money that's involved than that's involved here would be quite low, but the court will set the attorney fees that Mr. Siegel is responsible for at twenty-five thousand dollars.
> Now, one reason that it is as high as it is, is because of the needless contempt petitions that were filed. And I don't mean that they were not justified. I am simply saying that they shouldn't have been made necessary by Mr. Siegel's actions. So, I think the twenty-five thousand dollar fee is reasonable in this particular case.

In this case, the evidence does not indicate that the trial court abused its discretion by ordering Husband to pay part of Wife's attorney's fees. Wife's earning capacity is substantially less than Husband's, particularly after functioning for several years as homemaker and primary care giver for the parties' children. The main asset that Wife received in this case, the marital residence, cannot be easily used to pay for her attorney's fees.

Moreover, our review of the record indicates no abuse of discretion in the amount of

10

attorney's fees awarded. The record supports the trial court's observation that Husband's difficult behavior made the litigation unduly contentious. In addition, Husband's cavalier argument that Wife "could not possibly have thought that custody was a real issue" is unconvincing. Wife's counsel had no choice except to prepare to litigate the issue of custody. When custody became "not a real issue," Husband's request for custody should have been voluntarily dismissed. To permit it to remain an issue until immediately before the trial suggests questionable trial tactics and supports the amount of attorney's fees awarded to Wife.

Wife argues that Husband's appeal was frivolous and seeks attorney's fees and other expenses related to the appeal. Wife represented herself pro se on appeal, but seeks her expenses. However, as noted above, Husband prevails on appeal on some of the issues he raises. Under these circumstances, Wife's request for attorney's fees and expenses must be denied.

In sum, the evidence does not preponderate against the trial court's division of marital assets and debts, and the trial court is affirmed on these issues. We find that the trial court erred in basing its calculation of alimony and child support on Husband's income only for the months in the latter part of 1996 in which he was in solo law practice. Consequently, we reverse the trial court's holding on these issues and remand for recalculation of alimony and child support based on Husband's income for the entire year of 1996. We affirm the award to Wife of $25,000 in attorney's fees for proceedings at the trial court level. Wife's request for attorney's fees and costs on appeal is denied.

The decision of the trial court is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this Opinion. Costs are taxed equally to Appellant and Appellee, for which execution may issue if necessary.


_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**

11