IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

DOROTHY H. LONG,

     Plaintiff,

v.

DAVID G. LONG and RELEASE
COATINGS OF TENNESSEE, INC.,

     Defendants.

Shelby Chancery No. 18739-3
C.A. No. 02A01-9506-CH-00135

Hon. D. J. Alissandratos

**FILED**

**Feb. 4, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DAVID E. CAYWOOD, Memphis, Attorney for Plaintiff.

HAL GERBER and KAREN R. CICALA, Memphis, Attorneys for Defendants.

*MODIFIED AND AFFIRMED*

Opinion filed:

_____

TOMLIN, Sr. J.

     In this divorce case Dorothy H. Long ("Wife") filed suit for divorce in the Chancery Court of Shelby County from David G. Long ("Husband") alleging inappropriate marital conduct. Husband filed an answer and a cross-complaint. The parties stipulated that Husband was guilty of inappropriate marital conduct. The chancellor entered an order awarding Wife a divorce on these grounds. The chancellor at the same time appointed a Special Master and assigned him the responsibility of ascertaining if either party had dissipated or secreted marital assets during the marriage, determining the value of certain marital property and the current ownership of same and recommending to the court an appropriate division of marital assets, along with alimony, if any, as well as the assessment of costs and fees. After several hearings, the Special Master filed his final report to the chancellor covering the scope of his assignment. The chancellor affirmed the findings of the Special Master and included the Master's findings in his final decree.

     Both parties have appealed. Husband has presented three issues for our consideration. Did the trial court err in: (1) considering testimony as to acts of

inappropriate marital conduct and adultery? (2) making the distribution of the marital property and (3) awarding Wife her attorney fees and expenses?

Wife has submitted five issues for our consideration: Did the trial court err: (1) in awarding her rehabilitative alimony as opposed to alimony *in futuro*; (2) in failing to find that the waiving of Husband's interest in his mother's home constituted a dissipation of marital assets; (3) in using replacement value as opposed to fair market value in evaluating the household furnishings; (4) in awarding certain certificates of deposits to Wife which were no longer were in existence; (5) in ordering Wife to pay 50% of the Special Master's fees and expenses? For the reasons hereinafter stated, we modify and affirm.

The parties were married in 1953 and separated in 1990. Four children were born of the marriage, all of whom have reached adulthood. The record is uncontradicted that during this marriage of long duration Wife performed all the basic homemaking activities and was also the dominant caregiver of the children, in addition to performing all the general maintenance on the home and yard. Husband is president and sole stockholder of Release Coatings, Inc., a business he began some twenty-five years ago that provides a variety of services to the baking industry in the southeast. The record reflects that Wife worked part-time as a bookkeeper at Release Coatings from 1974 to 1990.

As previously noted, Wife's suit for divorce was based upon inappropriate marital conduct, which was later stipulated to by Husband. While not related to the issues before us, it might be noted that the chancellor appointed a Special Master prior to the entry of the decree for divorce to investigate certain financial matters relative to Husband and Release Coatings. After the divorce decree was entered the chancellor once again appointed a Special Master, the order specifying his duties, stated in part as follows:

2

. . .as is necessary to identify and value any additional marital and separate assets of the parties, if any, on or before 2 Jan 92, determine if either party has dissipated or secreted marital assets during the term of the marriage, and determine the income and expenses of the respective parties; this matter is further referred to the Special Master for the purpose of recommending to this court an appropriate division of marital property, including any adjustment for dissipated assets, if any, what alimony, if any, should be awarded to Plaintiff, what attorneys fees and suit expenses of Plaintiff's, should be paid by defendant, if any, the allocation of the Special Master fee and make any further recommendations to the court that may be appropriate.

The Special Master held a total of four hearings. The Master filed his initial "Final Report," which was objected to by both parties. He subsequently filed his "Amended and Supplemental Final Report" which was objected to by Wife. The chancellor then entered a final decree affirming the Special Master's Supplemental Final Report. This appeal followed.

I. Consideration of Specific Acts of Fault by the Court

Husband initially contends that the Special Master erred in taking proof from Wife concerning specific acts of inappropriate marital conduct, which he contends should have been prohibited as a result of his stipulating that he was at fault in the breakup of the marriage. Because of this stipulation he contends that the Special Master should not have heard testimony from Mrs. Long concerning his physical abuse of her, his public emotional abuse of her, his involvement in what clearly appeared to be an on going adulterous relationship and lastly, but by no means least, an ongoing process of secreting and/or dissipating marital assets.

This contention must fail for at least two reasons. First of all, as to this issue Husband has failed to comply with 27(a)(7) T.R.A.P., which requires all arguments in an appellant's brief to contain "citations to the authorities and appropriate reference to the record (which may be quoted verbatim) relied on." Furthermore, Rule 6, Rules of the Court of Appeals, provides as follows:

(a) Written argument in regard to each issue on appeal shall contain:

1. A statement by the Appellant of the alleged erroneous action of the Trial Court which raises the issue and a statement by the Appellee of any action of the Trial Court which is relied upon to correct the alleged error, with citation to the Record where the erroneous or corrective action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the Trial Judge with citation to that part of the Record where Appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein Appellant was prejudiced by such alleged error, with citations to the Record showing where the resultant prejudice is recorded.

4. A statement of each determinative fact relied upon with citation to the Record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the Trial Court will be considered on Appeal unless the argument thereon contains a specific reference to the page or pages of the Record where such action is recorded. No assertion of fact will be considered on Appeal unless the argument upon such assertion contains a reference to the page or pages of the Record where evidence of such fact is recorded.

This court has held on several occasions that where a party in its brief on appeal has advanced certain arguments or has set forth what he or she alleged to be facts without any citation to the record, this court is not under a duty to minutely search the record to verify these unsupported allegations. Schoen v. J.C. Bradford and Co., 642 S.W.2d 420, 426 (Tenn. App. 1982). We accordingly hold that issue is without merit.

II. The Distribution of Marital Property

In his brief Husband frames this issue as follows: "Did the court err in making distribution of marital property?" Reacting to this broad-based statement, the answer would be "no." It is the court's responsibility to make a "distribution of marital property." However, in attempting to analyze Husband's argument in support of this issue, it appears that he contests the following: (1) the

finding by the Special Master that he dissipated marital assets; (2) the appraisal of the Holmes Road property, owned 25% by Husband and 75% by Release Coatings; (3) the manner of division of the parties' corporate interests; and (4) the amount of wages earned by Wife. In addition, there appears to be an issue in a footnote by Husband concerning the evaluation of Husband's corporate stock in Release Coatings. This is a non issue, inasmuch as the parties agreed that the Special Master would be the one who personally valued the stock in accordance with the rules. In addition, Husband offers no proof as to what he contends the value of the stock should be.

The four above-mentioned sub-issues presented by Husband are findings of fact that were made by the Special Master and confirmed by the trial court. Our court has frequently held that where findings of fact have been made by a Special Master and concurred in by the trial judge they are conclusive on appeal unless this court should find there is no material evidence to support them. See In Re: Estate of Tipps, 907 S.W.2d 400 (Tenn. 1995).

As for the secretion and/or dissipation of marital property, the Special Master found and the chancellor concurred, that Husband had dissipated $147,697.87 of the parties' assets. The Special Master's final and supplemental reports outline in detail the method and manner in which Husband accomplished this. From reviewing this record, we are of the opinion that there is more than "any material evidence" to support the Special Master's findings. The record is replete with examples of Husband's efforts to attempt to avoid any responsibility for the dissipation of these marital assets. As a result of all this the Special Master concluded and the chancellor concurred, that Husband's credibility was found to be woefully wanting. The record reflects repeated instances of contradictory testimony by Husband, as well as repeated incidents of a lack of cooperation with the Special Master.

Regarding the evaluation of the Holmes Road Property. The record reflects that Release Coatings owns 75% interest in the property, while Husband personally owned the remaining 25%. As early as January 1992, in his first report the Special Master noted that the property had been professionally appraised at $367,000.00. Following the decree of divorce the chancellor again called on the Special Master to further evaluate the parties' assets. In his final report the Special Master again valued the property at the same figure as stated above. Husband filed objections to the Special Master's final report, but did not make any objection to the appraised valuation of the Holmes Road property. At a subsequent hearing in December 1993, Husband again failed to present any data regarding the value of the Holmes Road property. Husband's effort to have the Special Master consider a subsequent appraisal filed by him at a much later date, after several hearings, was too late. This court in Hopkins v. First Tennessee Bank, 560 S.W.2d 916, 918 (Tenn. App. 1977), stated that "as a general rule a Master's Report unexcepted to below may not be complained of on appeal." This issue is also without merit.

## B. The Issue of Release Coatings' Stock

Husband contends that the trial court erred in the distribution of Release Coatings' corporate stock between the two parties. This is a non-issue, because of Husband's misconstruction of the order of the Special Master. The Special Master's report reflects that Wife was awarded Release Coatings' 75% ownership in the Holmes Road property, valued at $275,250.00.[1] Wife was in no way awarded any corporate stock in Release Coatings, leaving Husband as the sole stockholder.

---

[1]The record reflects that Husband was the sole stockholder of Release Coatings and that he ran the business as a sole proprietorship. The master considered that financially Husband and Release Coatings were one and the same.

## C. Wife's Wages at Release Coatings

Wife contended that she was due wages from Release Coatings for the period April 2nd thru July 26, 1990. At the hearing Husband took the position that she had been paid in full. Wife stated that she had not been paid. The Special Master and the chancellor thereafter accepted Wife's version. Here again we have concurrent findings of the Special Master and the chancellor with material evidence supporting the finding. This issue is resolved in favor of Wife.

### III Wife's Attorney Fees

Husband contends that the Special Master and the chancellor separately and concurrently erred in awarding Wife's attorney fees. Husband was required to pay attorney fees and other litigation expenses to Wife in an amount slightly in excess of $31,000.00. Included in this figure is $3,134.00 to cover the cost of a private investigator hired by Wife in preparation for trial concerning Husband's alleged adulterous relationship with his current girlfriend.

The award of attorney fees by the trial court is considered an award of alimony. Cranford v. Cranford, 772 S.W.2d 48 (Tenn. App. 1989). On appeal this court will not interfere with the trial court's decision awarding attorney fees except where there is a clear showing that the trial court reached the wrong conclusion, with a result that manifest justice would be done if the award is allowed to stand. See Hanover v. Hanover, 775 S.W.2d 612 (Tenn. App. 1989).

From reviewing this record this court finds sufficient evidence to convince us that the trial court did not abuse its discretion in this regard. Considering the relative earning capacity of the parties, Husband has continuing ability to earn through his solely-owned business, but Wife has very little opportunity for future employment. Their past earning histories reflect this as well. Not only did the Special Master so find, but the record also supports the fact that most of these

7

hearings were brought about as a result of the actions of Husband in seeking to secret a large portion of the marital assets, along with his dilatory tactics in trying to prevent their discovery. Under the circumstances we are of the opinion that the Special Master and the chancellor were correct in ordering that these fees to be borne by Husband and that it was not an abuse of discretion. Accordingly we find that this issue is without merit.

Wife's Issues.

Having disposed of the issues of Husband, we now begin our consideration of the issues presented on appeal by Wife. First, Wife contends that the court erred in awarding her rehabilitative alimony rather than alimony *in futuro*.

In cases dealing with issues such as the one presently before us, where the matters under consideration were submitted first to a Special Master and then passed upon by the chancellor, we observe that while concurrent findings of fact are binding on this court as a reviewing court if they are supported by any material evidence, such a rule does not apply to questions of law or to mixed questions of law and fact. Bubis v. Blackman, 435 S.W.2d 492, 498 (Tenn. App. 1968). The trial court awarded Wife rehabilitative alimony in the amount of $1,835.00 per month, plus Wife's monthly health insurance premiums, until she reaches the age of sixty-five, dies or remarries, whichever comes first.

In this state, there is a recognized preference for rehabilitative alimony. However, when the court finds that rehabilitation is not feasible, we may grant alimony *in futuro*. Self v. Self, 86 S.W.2d 360, 361 (Tenn. 1993). While the concurrent findings of the Special Master and the chancellor below as to the amount of rehabilitative alimony are binding upon this court if we find there is any material evidence to support it, on the other hand there is no presumption of correctness attaching to the categorizing this alimony as rehabilitative.

8

Although there is no absolute formula for determining the amount of alimony to be paid, the need of the spouse seeking support is one of the more important factors. Furthermore, the ability to pay by the other spouse is also to be considered. Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. App. 1989). In addition, fault of the paying spouse in the breakup of the marriage may also be considered. Gilliam v. Gilliam, 776 S.W.2d 81 (Tenn. App. 1988). Furthermore, our courts recognize that the party obtaining the divorce is not to be left in a worse financial situation than he/she was before the opposite party's misconduct brought about a termination of the marriage. See Shackleford v. Shackleford, 611 S.W.2d 598, 601 (Tenn. App. 1980).

In his most comprehensive Final Report and Amended Final Report, the Special Master set out the various statutory factors that he considered in reaching the conclusion that Wife was entitled only to rehabilitative alimony rather than alimony *in futuro*. The parties were married for thirty-nine years. At the time of the proceedings below, the Husband was sixty years of age while Wife was sixty-one. As to the parties' relative earning capacity, experience, skills etc., the Master's report stated:

> However, due to the Husband's long experience in his business of Release Coatings of Tennessee, Inc., his vocational skills, employability and earning capacity still appear to be excellent, despite his health condition.
>
> Her [Wife] physical and mental health appear to be good. Her vocational skills are apparently limited to that of seamstress or part-time bookkeeper. Accordingly, her employability and earning capacity appear to be low.
>
> * * * *
>
> . . . The proof shows that the Wife regularly worked in the Husband's business as a bookkeeper while at the same time performing her duties as a homemaker and raising four children. The Special Master therefore finds that the Wife made substantial and tangible contributions to the education, training and increased earning power of the Husband.

The Special Master looked at the relative ability of each party for future acquisitions of capital assets and income. Due to Wife's lack of vocational skills and reduced opportunities for employment, the Special Master believed that she had little ability for future acquisitions of capital assets and income. Husband on the other hand, due to his ownership of Release Coatings, appears to at least have some opportunity for future acquisitions of capital assets and income. The Special Master's report stated in part:

\* \* \* \*

> . . . The Special Master believes that the evidence is more then sufficient to find that the Wife adequately fulfilled her role not only as a mother and homemaker, but also as a co-employee rendering valuable services as a bookkeeper in the Husband's business. Accordingly, the Special Master finds that the contributions of the Husband and the Wife to the acquisition, preservation or appreciation of the marital property should be given equal weight. As to the dissipation of marital property, the evidence is clear that the Husband's conduct has been egregious, over $147,000.00 having been secreted or dissipated by him (excluding interest) and he should bear the burden accordingly.

The Special Master made these findings in his consideration of T.C.A. § 36-5-101(d)(1)(B), one of the relevant factors to be considered in awarding rehabilitative alimony:

> (B)The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level.

> Mr. Long has a college education, and has a going business. . . . Mrs. Long in comparison, has had only a year of college, and some accounting training at technical and vocational institutions during the 1970's, but has no training on computers. Although she is a seamstress, it does not appear that she will be able to earn sufficient amounts of income from seamstress work. Due to her age, it appears that she may not be able to receive further education and training to improve her employability or earning capacity to a reasonable level prior to her reaching a normal retirement age of sixty-five.

Concerning subsection (K), "Relative Fault," the Special Master found as follows: "The Husband has stipulated to inappropriate marital conduct. . . ." Proof was also introduced regarding the Husband's intimate relationship with one

Leona Powers, both before and after the filing of the divorce complaint. Although the Husband and Mrs. Powers both testified that they had no intimate sexual relations prior to the divorce proceedings, the circumstances of their conduct, such as taking out-of-town trips together overnight, and Mr. Long having spent the night at Ms. Powers' residence prior to the divorce, coupled with the apparent propensity of Mr. Long to attempt to conceal or secret assets during the marriage, casts serious doubt on his credibility. Husband's conduct was certainly inappropriate marital conduct, whether or not adultery was committed.

Even disregarding the affair with Ms. Powers, of perhaps greater concern to the Special Master was proof that the Husband secreted substantial assets during their marriage, and his failure to disclose this until confronted with documents produced by the Special Master in connection with the preparation of his initial report. Accordingly, the Special Master has taken into account the Husband's fault in determining the rehabilitative alimony award.

In addition to the above, the record stands uncontradicted to the effect that Husband inflicted other emotional and physical abuse on Wife, in particular, during the latter years of their marriage. The record clearly reflects that these parties enjoyed a high standard of living in many ways. The parties took numerous foreign trips to Australia, the Far East, and various countries in Europe. As sole owner of Release Coatings, Husband, while drawing a reasonably modest "salary," would pay himself substantial bonuses at the end each year to fund their lifestyle. Based upon the facts before us, we are of the opinion that the Special Master along with the trial court abused its discretion in classifying the alimony to be paid to Wife as rehabilitative, rather than *in futuro*. Therefore, we hold that the amount of alimony awarded shall be paid to Wife as alimony *in futuro*, to be terminated upon her death or remarriage.

II.(W)  Dissipation of Certain Assets.

Wife contends that the trial court erred in failing to find that Husband dissipated the parties' marital assets when he waived his 11/18th interest in his mother's home and

(2) when he failed to demand and receive payment of a loan he had formally made to a family member.

As to the first portion of this issue, we are dealing with the matter of Husband's interest in real estate in North Carolina that had been purchased for Husband's mother. The history of this transaction, well documented by a paper trail of deeds and court orders, is as follows:

(1) Elizabeth Long conveyed the subject property to Husband and Wife by warranty deed dated 30 January 1969.

(2) On July 11, 1975, Husband and Wife reconveyed the property to Elizabeth Long.

(3) On July 11, 1975, Elizabeth Long conveyed a life estate to one of her sons, Ben Lee Long at the same time retaining a remainder interest.

(4) On December 29, 1975, Elizabeth Long conveyed an undivided one-half interest in fee to Husband (defendant here) subject to the life estate previously conveyed to Ben Lee Long.

(5) On August 10, 1976, Ben Lee Long quit-claimed his life estate back to Elizabeth Long.

(6) On August 31, 1984, Leslie Long and Wife, a brother of defendant, conveyed any interest that he would inherit from Elizabeth Long to Husband.

(7) A partition suit was filed by Husband and Wife against all other heirs of Elizabeth, with the exception of Leslie, seeking a court order to sell the North Carolina property. This was done on June 2, 1987 in Jackson County, North Carolina.

(8) On December 14, 1987, pursuant to a court order of the Superior Court of Jackson County, North Carolina, a commissioner's deed was executed to consummate an earlier public sale of the property to John E. Long, a brother of Husband, for

$63,100.00. The commissioner's deed reflected that the grantee, John E. Long, paid into court $22,456.59 and that he also waived paying into the court his 1/18 interest, amounting to $3,386.95. Defendant likewise waived being compensated for his 11/18 interest, amounting to $37,256.49.

In essence, defendant gave up his right to have John E. Long pay to the commissioner, for defendant's benefit, the sum of $37,256.49, which in turn would have been paid over to him. By waiving this payment he dissipated, secreted, or gave away these funds, putting them out of the reach of Wife. There is no material evidence in this record to support a finding of the contrary. Upon remand we direct that the chancellor, following the procedure set forth by the Special Master in his amended final report, make the appropriate adjustment in the division of assets by ordering Husband to pay one-half of $37,256.49 to Wife, plus interest.

As for the alleged failure of Husband to collect the outstanding balance of $4,400.00 of a $5,000.00 loan made to his brother, we think there is material evidence in the record to support the concurrent finding as to this issue. We resolve this issue in favor of Husband.

### III.(W)  The Method of Evaluating the Household Furnishings.

Wife contends that the Special Master erred as a matter of law in the method by which he valued the parties' household furnishings. In his final report he valued them at $15,000.00, setting aside furnishings worth $14,000.00 to the Wife and $1,000.00 to Husband. Both Husband and Wife testified as to the value of their furnishings. Wife testified that in her opinion the fair market value of those furnishings was $3,500.00. On the other hand Husband testified that these furnishings had a replacement value of $15,000.00 and that Wife's share was worth $14,000.00. Husband offered no testimony as to the fair market value of these items. It is clear from the record that the Special Master adopted Husband's testimony concerning value.

In Stephenson v. Stephenson, 1993 WL 298908 (Tenn. App. 1993), a domestic

13

relations case involving among other things the division of the parties' marital property, Wife testified that the household goods of the parties was worth $7,075.00, while Husband testified that they were worth $20,000.00. The trial court accepted the Wife's valuation. Husband contended that this was error, for the reason that Wife's valuation was based upon the fair market value of the household goods rather than their replacement costs. While the Stephenson court found that the household furnishings had a value more than that fixed by Wife and less than that fixed by Husband, the court stated that "we reject Husband's contention that the parties' household goods be valued at replacement value."

In Wallace v. Wallace, 733 S.W.2d 102, 107 (Tenn. App. 1987), this court stated that "the burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present." The Husband failed to produce any evidence concerning the fair market value of the parties' furnishings, thereby leaving as the only competent proof before the Special Master the testimony of wife concerning their fair market value. Accordingly, we reverse the chancellor and find that the fair market value of the furnishings of the parties should be fixed at $3,500.00. Exercising our inherent right to award these furnishings, we do so by awarding the value of the household furnishings involved to Wife. This figure should be used by the court in making any adjustment in asset values between the parties.

IV.(W) Alleged Imbalance in Payment of Costs.

Wife contends that as a result of a series of orders, one by the chancellor and one based upon a finding of the Special Master, she has been taxed with part of the costs that should have been borne by Husband, by virtue of the utilization of marital assets subsequently awarded to her by the Special Master. The record reflects that the following circumstances created the problem with which we are now dealing. In the early stages of this litigation, Husband filed a petition for contempt against Wife, contending that she had removed from bank accounts that were in the joint name of the parties the sum of $17,000.00, and attempted to hide these funds. A hearing was held,

14

following which the chancellor entered an order in which he found that Wife had removed $15,000.00 from the personal assets of the parties. Wife was directed to pay $15,000.00 "into the registry of the court." This order was entered in May 1990, well before the protracted hearings before the Special Master began.

In order to comply with this order, Wife deposited with the clerk and master of the Chancery Court of Shelby County three certificates of deposit issued by Leader Federal Savings and Loan Association, having a total face value of $22,318.00. Subsequently, in June 1991, the chancellor entered a consent order to allow payment of interim compensation and expenses to the Special Master, totaling $14,821.36. This order provided in part that "to the extent any certificates of deposit or other funds on deposit with the clerk and Master of this Court, the foregoing fees and expenses shall be paid out of such funds. . . ." Accordingly, these expenses were paid with funds derived from these three certificates of deposit placed with the clerk and Master by Wife pursuant to the earlier order of the chancellor.

The final report of the Special Master awarded these three certificates of deposit to Wife in her sole and separate name as part of the division of marital property. Apparently, the fact that almost $15,000.00 in round figures had been paid out by the clerk and master as intermediate expenses and compensation in connection with the Special Master's services was subsequently overlooked by the court when fees and costs of the Special Master were assessed 50% to each of the parties. What ultimately became Wife's sole assets were used in part to pay Husband's portion of these intermediate fees and expenses.

While this appears to have been an oversight on the part of the court and the Special Master, we are of the opinion that Wife's complaint is justified. It appears at first blush that Wife has been forced to pay $7,500.00 too much as a result of the payment from these escrow funds. However, as this court is of the opinion that 85% of the Special Master's fees and expenses should be born by Husband as a result of his conduct which we have described elsewhere in this opinion, this means that this

15

transaction inured even more to the benefit of Husband. In keeping with our holding, only $2,250.00 of these advanced interim payments should have been charged to Wife with the balance of $12,750.00 assessed to Husband.

Without requiring another hearing, it is the opinion of this court that this matter can be rectified by requiring Husband to pay to Wife an additional sum of $12,750.00 as his portion of the costs and expenses paid. It is so ordered.

V.(W) The Awarding of the Special Master's Fees

Over the course of these proceedings there were at least four hearings held by the Special Master. In addition to the master's fees, there were fees and charges of other experts involved in this matter, including but not limited to real estate appraisers and auditors. The Special Master's recommendation in this regard, approved by the chancellor, was that the Master's fees, along with these and the other expenses, should be allocated "equally among the parties," or 50% to Husband and 50% to Wife. His justification for doing so was as follows: "The services of the Special Master, inasmuch as they involve evaluation and division of the parties' assets in the case of the parties own inability to do so, should be deemed to have inured to the benefit of each of them equally."

The taxing of and assessing of costs by the trial court, along with fees for proceedings such as we had in this case, rests in the discretion of the trial court. We consider it on appeal without any presumption of correctness, examining the manner in which it was done to ascertain as to whether or not in the opinion of this court, based upon this record, the trial court did or did not abuse its discretion. In our opinion there was an abuse of discretion.

First of all, as for the Master's reasoning, many hearings in our courts inure to the benefit of both parties, but that does not necessarily dictate that we tax the costs equally. In this case, the divorce proceedings were clearly brought about by Husband's infidelity, emotional and physical abuse, and dissipation and/or secreting of the parties'

marital assets.  There are no findings in this record whatsoever that reflect upon any aspect of the life, conduct and financial dealings of Wife.

The Special Master in his uncontradicted report, characterized the behavior of Husband in dissipating and/or secreting the parties' marital assets as "egregious," or in common English, outrageous.  In his "Amended and Supplement to Final Report" filed in February 19, 1994, the Special Master stated that the hearings of April 20 and June 17, 1993 "primarily involved the issue as to what assets were secreted or dissipated by Mr. Long."  Thereafter, there were two supplements to the Special Master's final report made by him,  one in February 1994 and one in October 1994.  To each of these supplemental reports Husband filed objections, necessitating a further hearing in each case.  These two hearings generated $6,003.00 in fees of the total amount awarded.  As to these two hearings the Special Master found that Husband had no basis for any of the positions taken in the objections as filed.  Under these circumstances, we are of the opinion that it was inappropriate to divide the fees and charges equally among the parties, considering that the divorce as well as the majority of these proceedings before the Special Master was brought about by the conduct and misconduct of defendant. Accordingly, we modify the decree of the chancellor below in this regard and assess the fees and charges involving the Special Master's proceedings as follows: to Husband, 85%; to Wife 15%.

Accordingly, the judgment of the trial court is affirmed as modified.  Costs on appeal are taxed to Husband for which execution may issue if necessary.  This cause is remanded to the Chancery Court of Shelby County for further proceedings not inconsistent with this opinion.

_____
TOMLIN, Sr. J.

_____
FARMER, J                    (CONCURS)

17

CRAWFORD, P.J. dissents
(see separate opinion)