IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

July 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

PAULA MARIE BROWN,                ) C/A NO. 03A01-9812-CV-00417
                                  )
        Plaintiff-Appellee,        ) HAMILTON CIRCUIT
                                  )
v.                                ) L. MARIE WILLIAMS,
                                  ) JUDGE
JAMES A. BROWN,                   )
                                  ) AFFIRMED AS
        Defendant-Appellant.       ) MODIFIED

SANDRA J. BOTT, Chattanooga, for Plaintiff-Appellee.

BRUCE C. BAILEY, CHAMBLISS, BAHNER & STOPHEL, P.C., Chattanooga, for Defendant-Appellant.

**O P I N I O N**

Franks, J.

This is an appeal by the husband from a divorce decree, ordering him to pay alimony in the amount of $2,000.00 per month. The wife has appealed, raising issues dealing with the amount of child support and attorney fees.

The parties were married on November 23, 1975, and two children were born to the marriage. Only one child, Timothy Brown, age 15, was a minor at the time of the divorce. The parties stipulated that the wife would have custody of the minor child and stipulated an equal division of certain personal properties. The court was then required to distribute the property that was not covered by the stipulation, set

child support, and make a determination of alimony.

The Trial Judge based child support on the amount of $86,788.37, as husband's income, or $1,067.00 per month, plus $100.00 upward deviation, due to the fact that regular visitation had not been occurring between the defendant and the parties' minor child. Additionally, the Court ordered the defendant to pay the wife 21% of the net proceeds of any bonuses, distributions, or any income of any other type received from dividends, interest, bonuses, or other business income.

The Court also provided the parties were to hold the marital residence as tenants in common until the minor child reached the age of eighteen or graduates from high school, whichever is later. At that time, the wife could remain in the home by paying the husband his share of the equity, or the parties were to sell the home and divide the equity equally, after the wife receives the first $30,114.64 of the equity as part of the initial property distribution. The wife was ordered to pay the monthly mortgage payment and to make necessary repairs, though one-half of the cost of the repairs would be deducted from the husband's share of the equity when the residence was sold, and the husband is responsible for one-half of the insurance on the residence until such time as it is sold.

At the time of trial, the wife was 52 years of age and the husband was 50 years of age. The wife has a high school education, while the husband has a degree in accounting. The wife is a diabetic, controlled by diet, and is currently employed as a secretary, earning $550.00 a week. The husband is employed as an accountant, and his federal income tax documents reflect wages, tips, and other compensation in the amount of $83,456.01 for 1997, $93,395.28 for 1996, $89,510.50 for 1995. They also reflect income from dividends, interest, capital gains, and partnership distributions in the amount of $85,292.00 for 1997, $41,285.79 for 1996, and $4,180.00 for 1995.

The parties submitted income and expense statements. The wife's

2

statement reflects net monthly income from work in the amount of $1,864.41, and total monthly expenses of $4,463.47. This monthly income statement subtracts a $100.00 per month contribution to her 401(k) plan, and the amount of her expenses includes a $300.00 per month contribution to a savings account, $700.00 for birthdays, Christmas, and vacations, $75.00 for payment on a Discover credit card, and $150.00 per month for home maintenance.

The husband's statement reflects a gross monthly salary of $7,066.66, with a net income of $4,692.60. He claims general expenses of $1,350.00, which includes $700.00 in rent, $250.00 in utilities, $300.00 for car expenses, and $100.00 for insurance. He also claims expenses in the amount of $1,320.00, which includes such things as food, clothing, and recreation. Though he claimed general expenses in the amount of $1,350.00, he testified that these were estimated expenses, because he is currently living with his girlfriend and not paying her for any expenses. He said that he is paying $400.00 a month in rent to a friend, though he is just storing some belongings at the friend's house.

After this appeal was perfected, the wife filed a Motion to Consider Post Judgment Facts, asking the Court consider the husband's 1998 income tax return which reflects the husband's adjusted gross income as $234,000.00 for 1998. Prior to his deduction for alimony, the husband's income was $251,478.00. The wife insists this is relevant to the appeal because at trial, the husband testified his monthly income was $7,066.66 per month.

Essentially the issues on appeal are:

1. Whether the Trial Court erred in ordering periodic alimony as opposed to rehabilitative alimony.

2. Whether the Trial Court erred by awarding the wife alimony exceeding her needs and exceeding the husband's ability to pay.

3. Whether the Trial Court erred in setting child support in an amount that is not in compliance with the child support guidelines.

3

4. Whether the wife should be awarded her attorney's fees incurred in this Appeal.

As a preliminary matter, we are required to determine whether the Motion to Consider Post Judgment Facts should be sustained. We conclude that it is not appropriate to consider this tax return under this Rule. Both parties submitted affidavits addressing how the document affects the position of the parties. Instead of demonstrating how the document was relevant, the affidavits identify a dispute as to the source of the husband's income, and whether the wife actually received a large part of it.

We conclude the Trial Court did not err in ordering periodic alimony, as opposed to rehabilitative alimony. Trial Judges are given broad discretion in awards of alimony. *Aaron v. Aaron,* 909 S.W.2d 408 (Tenn. 1995). Such a decision is factually driven and calls for a careful balancing of numerous factors, including those listed in Tenn. Code Ann. § 36-5-101(d) (Supp. 1988).

Although the Legislature has expressed a preference for rehabilitative alimony, as opposed to permanent alimony, T.C.A. §36-5-101(d)(1), it has also declared, "Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3)." The record reveals that the husband's salary is substantially more than the amount the wife earns, and while both parties may receive additional income from investments, they are to share that income equally, so it will not necessarily alter her relative disadvantage. The Trial Court specifically found, "The income disparity listed above is a result of the relative education and training of the parties and the ability of each party to secure the necessary education and training. The work experience, work life expectancy, and

4

age of Mrs. Brown make it unlikely she can be rehabilitated to improve her earning capacity to a level commensurate with that of Mr. Brown." The evidence does not preponderate against this finding. T.R.A.P. Rule 13(d).

Trial court's are given a great deal of discretion in the amount of alimony they award. *Hall v. Hall*, 772 S.W.2d 432, 439 (Tenn. App. 1989); *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn. App. 1986). "The amount of alimony to be allowed in any case is a matter for the discretion of the particular circumstances. The appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused." *Ingram*, at 264.

In considering whether to award alimony and the amount, trial courts are to consider all relevant factors, set forth in T.C.A. §16-5-101(d). While there are several factors to be taken into account, our courts have emphasized that the most important factors to consider are the needs of the requesting spouse and the ability of the obligor spouse to pay. *See Smith v. Smith*, 984 S.W.2d 606, 609-610 (Tenn. App. 1997). Fault also plays an important role, *see Long v. Long*, 957 S.W.2d 825 (Tenn. App. 1997); and *Ford v. Ford*, 952 S.W.2d 824 (Tenn. App. 1996).

The husband argues that the Trial Court looked only at the relative earning capacities of the parties, and did not look at need and ability to pay. The substantial difference in income, however, along with the income and expense statements of both parties, reflect the needs and ability to pay. The wife earns a yearly salary of $28,600.00 and reports her net monthly take-home at $1,864.41, and claims her total expenses for herself and her minor child are $4,463.47. The husband argues that the wife's income is understated because she deducted a $100 per month contribution to her employer's 401(k) plan, and that her needs are overstated because her expenses include $300 per month for a savings contribution, $700.00 per month for birthdays, Christmas, vacations, and miscellaneous items, and $150.00 per month

5

for home maintenance.

While the husband takes issue with these expenses, prior to the divorce. the parties together earned over $100,000.00 per year and we cannot say that an estimated $700.00 per month for birthdays, Christmas, vacations and miscellaneous expenses is unreasonable, based upon their living standard. She should not have to forego vacations or stop buying her children presents because of the divorce. Similarly, the $150.00 for home maintenance is not an overstated expense. While one-half of the home maintenance expenses may be deducted from the husband's share of the equity when the house is sold, the wife must still make the home repairs and pay for them when they are made.

The husband claims a monthly gross salary of $7,066.66, with a net of $4,692.60, which includes deductions for federal income tax in the amount of $1,722.00, FICA in the amount of $531.38 and "other" in the amount of $120.68 per month. The Trial Court found the husband's gross monthly income to be $7,232.36, and the husband's testimony revealed his claims of gross and net income were less than the true amount due to his voluntary contributions to his 401(k).

The husband's gross income from his salary is understated, since the Trial Court found his gross income to be $200.00 more than claimed by him, and his expenses are overstated, since he admits he is not incurring general living expenses because he is living with his girlfriend, who pays all the bills. We cannot say the award of $2,000.00 per month in alimony under all the facts and circumstances is excessive, since he has been receiving income over and above his salary. We affirm the Trial Judge on this issue.

On the issue of child support, we conclude the Trial Judge did err in setting the child support in an amount that is not in compliance with the child support guidelines. In addition to the set amount of child support, the husband was ordered to

pay 21% of any additional income from such things as interest, dividends, and partnership distributions as child support. T.C.A. §36-5-101(a)(2)(A) provides:

> Courts having jurisdiction of the subject matter and of the parties are hereby expressly authorized to provide for the future support of a spouse and of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the court having jurisdiction thereof, including levy of execution.

The foregoing provision prohibits courts from ordering a variable amount of child support based on variable income, even though that may be the more rational approach based on the circumstances. *See Robertson v. Robertson*, No. 03A01-9711-CV-00511, 1998 Tenn. App. LEXIS 761 (Tenn. App. Nov. 9, 1998). Since the Legislature has mandated that courts set a definite amount of child support, the issue thus becomes how should that amount be calculated. The child support guidelines, which must be applied as a rebuttable presumption of the proper amount of child support, requires that child support is to be based upon a flat percentage of the obligor's net income, depending upon the number of children to be supported. Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(2). Net income is calculated by subtracting FICA and federal income tax from gross income, so the first step is determining the obligor's gross income. *See* Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(4).

> The guidelines define gross income as
>
> all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. . . .

Tenn. Comp. R. & Regs. tit 10, ch. 1240-2-4-.03(3)(a). Accordingly, the husband's

7

income in the form of interest, dividends, and partnership distributions would be included within the definition of "gross income." The guidelines further provide that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(3)(b). Therefore, we conclude that the husband's additional income must be averaged and added to his salary in order to determine gross income for child support purposes.

Several unreported cases have dealt with this issue in various ways. The unreported case of *Mayfield v. Mayfield*, No. 01A01-9611-CV-00501, 1997 Tenn. App. LEXIS 304 (Tenn. Ct. App. Apr. 30, 1997), relied on a provision in the child support guidelines in holding that the court must average income for the past two years. This provision in the guidelines provides:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment whichever is appropriate, until the current support order is entered. This amount must be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party. An amount should be included in the order to reduce the arrears judgment on a monthly basis within a reasonable time.

Tenn. Comp. R. & Regs. tit 10, ch. 1240-2-4-.04(1)(e).

While this provision does not mandate that trial courts average variable monthly income from the past two years to determine gross income for current child support, it does reflect the legislative intent that when the exact amount of gross income is not known an average must be taken, and a period of two years is an appropriate time period to average that income. On this basis, we conclude that the case should be remanded to the Trial Court for a determination of a definite amount of child support based on the husband's average income for the past two years, which is to include any interest income and partnership distributions that are attributable to the

8

husband.[1] This would be the proper amount of child support under the guidelines, unless rebutted by either party.

The wife has also appealed the decision of the Trial Court to increase the child support by $100.00 a month over the guidelines, and urges us to calculate a specific number of days that the husband will not be visiting his son. There is no indication that the father will not visit his son. He has visited his son, though not in the manner or the amount contemplated by the guidelines. Since there will be visitation, the Court cannot use a precise mathematical formula to determine the proper amount of additional child support. Cases of this nature are best determined on a case-by-case basis, and the evidence does not preponderate against the finding of the Trial Court that increases the ordered child support in the amount of $100.00 per month. T.R.A.P. Rule 13(d).

Finally, the wife asserts that this is a frivolous appeal and that she should be entitled to attorney fees and costs, or that she is entitled to attorney fees for defending her alimony award. The appeal is not frivolous, and we decline to award the wife her attorney's fees, and in our discretion we assess one-half of the cost of the appeal to each party.

The judgment of the Trial Court is affirmed, except as modified and remanded.

\_\_\_\_
_____
Herschel P. Franks, J.

---

[1] Any child support paid under the Trial Court's order will be credited against the amount set upon remand.

CONCUR:


_____
Houston M. Goddard, P.J.

IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

**July 28, 1999**

**Cecil Crowson, Jr.
Appellate Court
Clerk**

PAULA MARIE BROWN,                    ) C/A NO. 03A01-9812-CV-00417
                                      )
        Plaintiff-Appellee,           )
                                      )
                                      )
                                      )
                                      ) APPEAL AS OF RIGHT FROM THE
v.                                    ) HAMILTON COUNTY CIRCUIT COURT
                                      )
                                      )
                                      )
                                      )
JAMES A. BROWN,                       )
                                      ) HONORABLE L. MARIE WILLIAMS,
        Defendant-Appellant.)  JUDGE


# C O N C U R R I N G   O P I N I O N


        I concur in the majority opinion.  I agree that the majority's approach to determining gross income for current child support is correct in this case.  I write separately to express my view that the two-year-average approach utilized by the majority in this case may not be appropriate in all cases.


                    _____
                    Charles D. Susano, Jr., J.


11

_____
Charles D. Susano, Jr., J.