IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 7, 2000 Session

## BRENDA C. KING v. DANNY F. KING, D.V.M.

**An Appeal from the Circuit Court for Davidson County**
**No. 97D-2861     Marietta M. Shipley, Judge**

---

**No. M1999-02556-COA-R3-CV - Filed August 22, 2001**

---

This is a divorce case. The parties divorced after 31 years of marriage. The trial court granted the wife a divorce on the grounds of inappropriate marital conduct. The wife was awarded alimony *in futuro* in the amount of $6000 per month for two years. After two years, the wife would receive $4500 per month and, upon remarriage, the amount of alimony *in futuro* would decrease to $2000 per month. The trial court also ordered the husband to pay $10,000 of the wife's attorney's fees. Both parties appeal; the wife appeals the division of marital property and the husband appeals the award of alimony. We affirm in part, modify in part, and reverse in part, affirming the award of alimony *in futuro*, modifying the amount of alimony and eliminating the award of alimony *in futuro* after the wife's remarriage.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Modified in Part, and Reversed in Part.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which DAVID R. FARMER, J. and BEN H. CANTRELL, P.J., M.S., joined.

Robert L. Jackson and Stanley Kweller, Nashville, Tennessee, for the appellant, Danny F. King.

Marlene Eskind Moses and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Brenda C. King.

### OPINION

This is a divorce case. Brenda King ("Wife") and Danny King ("Husband") married in 1967. The parties had a tumultuous marriage marked by Husband's alleged physical and emotional abuse of Wife. After 30 years of marriage, in September 1997, Wife filed for divorce. The case was tried over two days in April, 1999. At the time of trial, Wife and Husband were 51 and 53 years old, respectively.

Husband is a veterinarian who owns and operates a veterinary clinic. Wife has some college education, but left college in order to work full-time while Husband completed his education. During the early years of the parties' marriage, Wife worked outside the home. Later, Wife was primarily a homemaker, but also helped Husband run the veterinary clinic. To aid her in her work at the veterinary clinic, Wife completed several courses in management and taxation. Wife received no salary for her work in the veterinary clinic. Wife worked in the clinic from the time it opened in 1971 until February 1998, when Husband removed Wife from the facility. At the time of the divorce, Wife was unemployed. At the trial, there was some proof, albeit unclear, that Husband's income from the veterinary clinic in 1998 was roughly $180,000.

At the trial, Wife presented the testimony of her treating psychologist, Dr. Joan Schleicher. Dr. Schleicher testified that, as a result of Husband's abuse, Wife suffers from post-traumatic stress syndrome. Dr. Schleicher said Wife had been taking anti-depressants since 1999, and that the medication, combined with therapy, had greatly improved Wife's condition. Dr. Schleicher felt that Wife would benefit from employment and opined that, within a few months to two years, Wife's mental health would be at a point where she could seek employment in a setting which did not have factors which could trigger her post-traumatic stress syndrome, such as a supervisor with Husband's personality characteristics. Dr. Schleicher emphasized that Wife is a bright woman who is good at many things and could benefit from employment, but maintained that, at the time of the hearing, Wife could not fully support herself.

After the hearing, Wife was granted the divorce based on Husband's inappropriate marital conduct and his adultery post-filing of the divorce complaint. Wife was awarded the majority of the marital property. The trial court required Husband to maintain a life insurance policy for $250,000 with Wife as the sole beneficiary. The trial court found that Wife's standard of living was $5000 per month, and assumed that, after two years, Wife would be capable of earning $25,000 per year. The trial court made no finding as to Husband's earning capacity or average earnings. Wife was awarded alimony *in futuro* in the amount of $6000 per month for two years. After two years, the amount of the alimony *in futuro* would be reduced to $4500 per month. Upon Wife's remarriage, the award would be immediately reduced to $2000 per month. Husband's alimony obligation was to terminate upon his death. In addition to alimony *in futuro*, the trial court also awarded Wife $150,000 in alimony *in solido*. In payment of the alimony *in solido*, the trial court required Husband either to make monthly payments into an alimony trust over a period of ten years, beginning two years after the divorce, or to maintain an additional life insurance policy of $250,000 with Wife as the sole beneficiary. Husband subsequently chose to secure the additional life insurance policy. Finally, the trial court awarded Wife $10,000 in attorney's fees. The divorce decree was later modified to set out specific parameters as to the life insurance policies Husband was ordered to obtain under the original divorce decree.[1] Both parties now appeal.

_____

[1]Subsequent to Husband's filing of his notice of appeal on July 6, 1999, Wife filed a Motion for a New Trial or in the Alternative to Alter or Amend the Final Decree, placing the appeal on hold. On July 15, 1999, the parties entered an agreed order modifying the final divorce decree with regards to certain property. On October 29, 1999, the trial court conducted a hearing regarding Wife's motion for a new trial or in the alternative to alter and amend.
(continued...)

On appeal, Husband argues that the trial court's award of alimony *in futuro* is inappropriate because the trial court found that Wife is capable of earning a living of at least $25,000 per year. He contends that the trial court should have awarded rehabilitative alimony based on its finding of Wife's earning capacity and because of the parties' relative ages, educational training, physical condition, contribution to the breakup of the marriage, and the trial court's division of marital property in Wife's favor. Although Husband concedes that his present earning capacity is greater than Wife's earning capacity, he contends that his future earning capacity is questionable because he has been diagnosed with congestive heart failure. In the alternative, Husband argues that the trial court's award of alimony *in futuro*, in combination with its award of alimony *in solido*, is excessive because the amount of alimony *in futuro* awarded exceeds the trial court's finding as to Wife's monthly need, and Husband's ability to pay. Husband maintains that the trial court made no finding as to his income or earning capacity, and yet awarded Wife 30% to 40% of his present income.

Husband also argues that the trial court's award of alimony *in futuro* after remarriage violates Tennessee Code Annotated § 36-5-101(a)(2)(B), which provides that alimony *in futuro* terminates "automatically and unconditionally upon the remarriage of the recipient." Finally, Husband contends that the award of attorney's fees to Wife is in error because much of Wife's legal expenses arose out of her failure to cooperate with discovery and her repeated failure to produce records ordered by the trial court.

Wife argues that the test for rehabilitation is not, as Husband contends, whether the disadvantaged spouse is capable of earning some income. Rather, the test is whether the disadvantaged spouse can legitimately expect to earn a "reasonable level" of income in light of the facts and circumstances of the case. Wife argues that the trial court's award of alimony *in futuro* was proper in this case based on the length of the parties' marriage, the substantial disparity in the parties' earning capacity, her lack of a college degree, her mental and emotional problems, her contribution to the marriage, the standard of living enjoyed by the parties prior to divorce, and Husband's fault in the breakup of the marriage. Wife maintains that the amount of alimony awarded is not excessive in light of her demonstrated need, her lack of personal assets or financial resources outside of the marital property awarded to her, and Husband's income. She also argues that the trial court's award of alimony after remarriage and the award of attorney's fees is appropriate under the facts of this case.

Wife argues that the trial court erred in several respects. First, Wife contends the trial court erred by failing to require Husband to designate her as an irrevocable beneficiary on the life insurance policies he was required to obtain, in order to prevent Husband from changing the beneficiary or allowing the insurance to lapse. She also argues that the trial court erred in ending Husband's alimony *in futuro* obligation upon his death rather than upon her death. Finally, Wife asserts that the trial court's division of property was inequitable because the value of some of the

---

[1](...continued)

Subsequently, on February 16, 2000, the trial court entered an order denying Wife's motion and altering the divorce decree in other respects that do not affect this appeal.

property she received is considerably less than the trial court's valuation. As a result, Wife argues, Husband received a greater percentage of the marital property than he contends.

The trial court has broad discretion to determine the amount and duration of alimony. Generally, issues regarding alimony are factually driven and the trial court should balance the factors set forth in Tennessee Code Annotated § 36-5-101(d).[2] The trial court's decision regarding alimony

---

[2]Tennessee Code Annotated § 36-5-101(d) states:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in § 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2) An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable

(continued...)

-4-

is normally overturned only if the trial court has abused its discretion. ***Goodman v. Goodman***, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999). Similarly, the trial court is afforded discretion concerning whether to award attorney's fees in a divorce case. *See **Long v. Long***, 957 S.W.2d 825, 827 (Tenn. App. 1997). On appeal, the appellate court shall not interfere with the trial court's decision except upon a showing of an abuse of that discretion. ***Id.*** Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. *See **Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. *See **id.*** A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. *See **Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. App. 1997).

Wife argues on appeal that the trial court's division of marital property was in error. She argues that the trial court's division was inequitable, based on the trial court's error in valuing several properties awarded to her. However, based on our review of the record, we find that the evidence does not preponderate against the trial court's findings regarding valuation. The trial court's division of marital property is affirmed.

Second, we address Wife's contention that the trial court erred in not requiring Husband to designate her as an irrevocable beneficiary on the life insurance policies. However, in its modified divorce decree, the trial court required, *inter alia*, that Husband inform the insurance companies from which he obtained the policies that Wife be notified directly if any changes are made to the policies or there is a lapse in payments. This issue is without merit.

Husband appeals the trial court's award of alimony *in futuro*, arguing that the trial court should have awarded only rehabilitative alimony and that the amount awarded is excessive. A trial court has wide discretion in determining whether an award of alimony should be rehabilitative or in futuro. ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000). In assessing the type of alimony which should be awarded, the trial court must carefully weigh the factors set forth in Tennessee Code Annotated § 36-5-101(d)(1). Alimony *in futuro* is appropriate where the trial court finds that economic rehabilitation is not feasible and long term support is necessary. ***Robertson v. Robertson***, No. E2000-01698-COA-RM-CV, 2000 WL 1211314, at *1 (Tenn. Ct. App. Aug. 25, 2000), appeal den. Mar. 12, 2001. Mere employability or a capacity for self-support at a subsistence level is not synonymous with rehabilitation. ***Id.*** (quoting ***Blumberg v. Blumberg***, 561 So.2d 1187, 1189 (Fla. Dist. Ct. App. 1989). In determining whether rehabilitation is feasible, the trial court should determine whether the disadvantaged spouse can improve her earning capacity to a reasonable level. ***Dempsey v. Dempsey***, No. M1998-00972-COA-R3-CV, 2000 WL 1006945, at *4 (Tenn. Ct. App. July 21, 2000)

---

[2](…continued)
efforts at rehabilitation have been made and have been unsuccessful.

In this case, Wife does not have a college degree, and for the majority of the marriage, worked only in Husband's veterinary clinic. Wife is still relatively young, but suffers from mental and emotional problems which the trial court could conclude stem from her marriage. Wife's treating psychologist testified that it may be months before Wife would be able to maintain full-time employment. Further, although the trial court found that Wife will ultimately have a potential earning capacity of $25,000, Husband's earning capacity without question considerably exceeds that of Wife. Consequently, we find that the trial court did not err in awarding alimony *in futuro* in this case.

Husband also argues that the amount of alimony awarded to Wife is excessive, and that there should be no continuation of the alimony *in futuro* after Wife's remarriage. Based on the trial court's finding as to the amount of Wife's monthly needs, considering the trial court's division of marital property and the award of alimony *in solido*, and considering the parties' circumstances as a whole, we must conclude that the amount of alimony awarded is excessive. Moreover, under Tennessee Code Annotated § 36-5-101(a)(2)(B), the award of alimony *in futuro* after remarriage is in error. Consequently, we modify the award of alimony *in futuro* to $4,500 per month for the first two years, and $3,000 per month thereafter, terminating upon Wife's remarriage or upon the death of Husband or Wife, whichever occurs first.

Husband argues that the trial court erred in awarding Wife attorney's fees. We find no abuse of discretion in the award of attorney's fees, and this decision is affirmed. All other issues are pretermitted, and we affirm the trial court's decision in all other respects.

The decision of the trial court is affirmed in part, modified in part, and reversed in part, as set forth above in this Opinion. Costs are taxed equally to the appellant Danny F. King and the appellee Brenda C. King, and their sureties, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE