**In re ESTATE OF Henry Thurston TIPPS, Deceased.**

**Ralph CHRISTIAN, Applicant,**

**v.**

**ESTATE OF Henry Thurston TIPPS and Billy Tipps, Respondents.**

Supreme Court of Tennessee, at Nashville.

Sept. 18, 1995.

Ralph Christian, Nashville, for Applicant.

Ronald K. Nevin, Nashville, for the Respondent Estate.

John D. Kitch, Nashville, for the Respondent Billy Tipps.

### OPINION

DROWOTA, Justice.

In this controversy involving the fees paid to an attorney representing a decedent's estate, the attorney, Ralph Christian, appeals from the Court of Appeals' affirmance of the probate court's judgment. This judgment, in turn, confirmed the report filed by the probate master, which recommended that Christian's legal fees for services rendered to the estate of Henry Thurston Tipps be reduced from $43,000 to $25,000. This case presents the following issue for our review: whether the master's failure to file a transcript with its report, as provided by Tenn.R.Civ.P. 53.04(1), requires that the judgment of the probate court be vacated and the case remanded for further proceedings.

### FACTS AND PROCEDURAL HISTORY

In May 1989 the will of Henry Thurston Tipps was admitted to probate. The will nominated the applicant in these proceedings, Ralph Christian, as the executor of the estate; but it also named the decedent's sis-

ter, Ms. Glyndon Riggins, as executrix in case Christian declined or could not serve. In June 1989 the probate court entered an order naming Ms. Riggins as executrix.

Subsequently Ms. Riggins employed Christian to represent the estate. Since the estate consisted of one parcel of real estate and other liquid assets, such as bank deposits and CDs, Christian's primary duties were locating and collecting the assets, controverting them into cash, and depositing the proceeds in a bank account in Nashville. In April 1990, Ms. Riggins paid Christian approximately $28,000 for legal services rendered to the estate; and in November of that year she paid Christian an additional legal fee of $15,000. Neither payment was approved by the probate court.

In December 1991 Ms. Riggins died; and in July 1992 the probate court appointed the public administrator as the administrator of the estate. Christian then filed a motion with the probate court for approval of the $43,000 in fees that he had previously received. Christian filed with this motion an affidavit entitled "Daily Service Record," which listed the services he had rendered to the estate in a detailed and comprehensive fashion; this affidavit stated that Christian had provided 383 hours of service to the estate. This motion was opposed by the new administrator, Ronald Nevin, and one of the beneficiaries of the estate, Billy Tipps, who alleged that the fee was excessive because it included services that were clerical in nature, such as receiving mail and depositing checks. Nevin and Tipps supported this argument by specifically referring to entries in the "Daily Service Record" that could have been performed by a runner or other clerical worker; therefore, according to Nevin and Tipps, these items should not have been billed at Christian's normal rate of $113 per hour. Nevin and Tipps requested that the Court reject Christian's specific request for fees and judicially determine a reasonable fee for the services rendered to the estate. The probate court granted this request and referred the matter to a master.

After conducting informal hearings, the master filed a report in June 1993 in which it concluded that "228 hours should be allotted to counsel for the estate for his services," and that a reasonable fee for the legal services rendered was $25,764 (228 hours multiplied by $113 per hour). Christian filed an exception to the master's report, arguing, *inter alia*, that the report was invalid because the master had failed to file with it a transcript of the evidence as required by Tenn.R.Civ.P. 53.04(1). However, in July 1993 the probate court confirmed the report and ordered Christian to reimburse the estate $17,236 ($43,000 minus $25,764). Christian appealed from this ruling to the Court of Appeals, but that court affirmed the judgment of the probate court. We granted Christian's application for permission to appeal for the primary purpose of clarifying Rule 53.04(1), a provision that has caused some confusion in the Court of Appeals over the years.

## I.

Tenn.R.Civ.P. 53.04(1) governs the master's report and provides as follows:

> The master shall prepare a report upon the matters submitted to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report. He shall file the report with the clerk of the court and, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.

A "transcript" is defined by Tenn.R.App.P. 24(b), which provides, in pertinent part, as follows:

> If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal
> . . .

The definition of "transcript" in Rule 24(b) is distinguished from the less formal "State-

ment of the Evidence," which is defined by Rule 24(c):

> If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal ...

Turning to the case at hand, it is undisputed that the master did not file a "transcript" of the proceedings or evidence as contemplated by the rules of civil and appellate procedure; indeed, the only document filed by the master is the report itself, a two-paragraph document that briefly describes the case and makes the above-mentioned findings of fact. Christian argues that the master's failure to adhere to the dictates of Rule 53.04(1), Tenn.R.Civ.P., necessarily renders the report invalid, and that the judgments of the lower courts affirming that report must therefore be reversed.

In response, Nevin and Tipps argue that despite the language of Rule 53.04(1)—which places the burden of preparing and filing the transcript on the master—it is not the master but the party challenging the report who is charged with the responsibility of filing the transcript. This construction of the rule, they argue, is consistent with the general rule governing appellate practice, which requires that the appellant prepare and file the transcript in the appellate court. *See* Tenn. R.App.P. 24(b) and (c). Nevin and Tipps argue, moreover, that this construction has been placed upon Rule 53.04(1) by this court in *Harrison v. Arnold,* 558 S.W.2d 831 (Tenn. 1977) and by the Court of Appeals in several unreported decisions.

In assessing the merits of the parties' positions, we first note that this issue has not been squarely presented to this Court. In *Harrison, supra,* the case relied upon by the respondents and by the Court of Appeals below, the issue was not whether the master had failed to file a transcript of the proceed-

ings, as the opinion makes it clear that the master had actually filed a transcript and thereby discharged its duty under Rule 53.04(1). Rather, *Harrison* dealt with a situation where the transcript had not been properly authenticated by the master; and the question presented was whether the party seeking to appeal should have assumed the responsibility of having the filed transcript properly authenticated. In its analysis, the *Harrison* court cited the general rule that the party seeking to appeal is responsible for preparing the record for appeal, and concluded that because the party contesting the findings of the master had not preserved the record by having the transcript authenticated, that party had effectively waived its right to appeal. Therefore, the actual issue presented in *Harrison* is clearly outside the scope of Rule 53.04(1), and that decision cannot be deemed to control the case before us.

■ The determination that *Harrison* is not controlling, however, does not resolve this issue, for there is some authority supporting the respondents' position. In at least two unreported cases, the Court of Appeals, by stating that "the evidence is presumed to support the master's decision when neither party filed a transcript of hearing before the master," has effectively construed Rule 53.04(1) to place the responsibility for filing the transcript on the party seeking to appeal.[1] These decisions are, in turn, based upon *Leath v. Carr,* 22 Tenn.App. 305, 122 S.W.2d 819 (Tenn.App.1938). In *Leath,* the defendant appealed from a report rendered by the master and confirmed by the trial court, arguing that because the master had not preserved the evidence upon which it based its decision, there was nothing to enable the trial court to act upon the report. The *Leath* court summarily rejected this claim, reasoning as follows:

> 'It is the duty of one seeking a review of an adverse judgment or decree, where a bill of exceptions is necessary to present the errors complained of, to prepare a bill of exceptions and to see that it is approved and signed by the trial judge and seasonably filed with the clerk of the court below.'

---

1. *See* Lawrence Pivnick, Tennessee Circuit Court Practice. (1986), § 24–25, n. 16 for these cases.

In this case the defendant, we think, should have had the evidence heard by the clerk reduced to writing, and should have excepted to the report, if he desired to do so, and should have brought the evidence and the exceptions to the attention of the trial judge and invoked his action thereon. Without having done this, we think he is in no position to complain of the action of the court in confirming the clerk's report, and is in no position to complain in this court.

*Leath,* 22 Tenn.App. at 307, 122 S.W.2d at 821 (citation omitted).

At the time it was decided, *Leath* was a correct decision: it adhered to one of the fundamental tenets of appellate procedure; and there existed at that time no statute or rule specifically placing the burden of filing the transcript upon the master. However, Rule 53.04(1), which was promulgated in 1970,[2] superseded the prior statutes governing masters[3] and, by extension, the cases construing those statutes; and the rule clearly places the burden of filing the transcript upon the master. *See Glenn v. Gresham,* 602 S.W.2d 256, 258 (Tenn.App.1980). Thus, although we are persuaded by the respondents' pragmatic arguments, we are compelled to conclude that because the master does have the responsibility of filing a transcript unless specifically directed otherwise by the order of reference under the current Rule 53.04(1), the master in this case erred by failing to file a transcript. Thus, any contrary holding of the Court of Appeals is overruled.

 This finding does not mean, however, that the judgments of the lower courts must necessarily be reversed. It is well settled that "findings of fact by the master concurred in by the [trial court] are conclusive on appeal if supported by any material evidence," *see Glenn,* 602 S.W.2d at 258; *Maple Manor Hotel, Inc. v. Metropolitan*

*Gov't,* 543 S.W.2d 593 (Tenn.App.1975); and that these findings have the same effect as a jury verdict. *Black v. Love & Amos Coal Co.,* 30 Tenn.App. 377, 381, 206 S.W.2d 432, 433–34 (1947). The record in this case includes the above-mentioned "Daily Service Record,"—the detailed document relied upon by Christian to establish the validity of his fee and by Nevin and Tipps to dispute that fee. We have examined this document, and when considered in conjunction with the briefs and arguments of counsel and the other materials in the technical record, find that it fully supports the result reached by the three judicial bodies in this case. Therefore, there is not "a total absence of material in the record supporting the report of the ... master," *Glenn,* 602 S.W.2d at 258, and we deem the failure of the master to file a transcript to be harmless error.[4]

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

ANDERSON, C.J., and REID and BIRCH, JJ., concur.

---

**2.** The Rules of Civil Procedure were adopted on February 20, 1970, and became effective on January 1, 1971.

**3.** *See* the Advisory Committee Comments to Rule 53.

**4.** Christian also argues that even if the fee reduction is upheld, the executrix should be required

to reimburse the estate for the amount that was overpaid. This argument has no merit, as the executrix is not a party to this action and, therefore, we cannot order her to remit any monies. Because it is well-settled that the estate is only liable for an attorney's fee that is judicially approved, Christian must refund the amount judicially deemed to be excessive to the estate.