| | | |
|---|---|---|
| BOBBY F. RAMSEY, | ) | |
| | ) | Davidson Chancery |
| Plaintiff/Appellant, | ) | No. 94-3452-III |
| | ) | |
| VS. | ) | |
| | ) | |
| TED A BURKHALTER, FRANK | ) | Appeal No. |
| RYAN and RAMSEY BURKHALTER, | ) | 01A01-9707-CH-00318 |
| P.C., | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

May 29, 1998

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

David T. Hooper, #5413
HOOPER & HOOPER, PLLC
109 Westpark Drive
Suite 410
Brentwood, Tennessee 37027
ATTORNEY FOR PLAINTIFF/APPELLANT


Jack W. Derryberry, Jr., #3870
WARD, DERRYBERRY & THOMPSON
1720 Parkway Towers
404 James Robertson Parkway
Nashville, Tennessee 37219
ATTORNEY FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED.


HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCURS:
BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| | | |
|---|---|---|
| BOBBY F. RAMSEY, | ) | |
| | ) | **Davidson Chancery** |
| Plaintiff/Appellant, | ) | No. 94-3452-III |
| | ) | |
| VS. | ) | |
| | ) | |
| TED A BURKHALTER, FRANK | ) | **Appeal No.** |
| RYAN and RAMSEY BURKHALTER, | ) | 01A01-9707-CH-00318 |
| P.C., | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

# O P I N I O N

All of the captioned parties are certified public accountants who were participants as shareholders and employees of a professional corporation. The plaintiff, Bobby F. Ramsey, brought this action to recover salary due him and the value of his stock in the corporation. He has appealed from a judgment in his favor which he insists is inadequate.

## BACKGROUND FACTS

Plaintiff-appellant, Bobby F. Ramsey, has been a certified public accountant since 1967. After five years of various accounting employments, he formed a partnership which was dissolved by the death of his partner. For ten years thereafter, he practiced under the name of Ramsey & Associates. Thereafter he practiced in a partnership for two years and, in 1989, he resumed practice under the name, Ramsey & Associates. One year later, in November 1990, he and Ted Burkhalter formed the firm of Ramsey-Burkhalter, P.C.. Burkhalter, who was also a lawyer, drafted their agreement.

In order to provide working capital for their enterprise, the parties agreed to contribute their respective accounts receivable to the enterprise. They agreed that each would be entitled to draw $1,000 per week, and that Burkhalter might draw more during tax season when his accounting duties would curtail his legal work and income. During 1991, neither party drew any salary. It was agreed that the salaries of the partners would be considered an operating expense

-2-

of the enterprise which would continue to be liable for unpaid salaries and that profits would be divided after deduction of operating expenses. Neither party withdrew any profit prior to the beginning of the present action.

On January 1, 1992, Frank Ryan was admitted to the enterprise. He was to be paid $50,000 per year and was to be considered a "founding partner." He was paid his salary continuously until the inception of this suit. He made no contribution by waiver of salary or assignment of receivables.

In January 1992, Mr. Ramsey was diagnosed as suffering from congestive heart failure.

In March 1994, he underwent surgery for removal of a malignancy and thereafter received chemotherapy; all of which reduced his capacity to work. He received his full salary through May 31, 1994, at which time Frank Ryan notified him that he and Burkhalter had decided to cut his (Ramsey's) salary to less than one-half.

On August 28, 1994, Burkhalter and Ryan notified Ramsey that he should retire. Discussions ensued as to which "accounts" Ramsey should take with him, which should remain with Burkhalter and Ryan, and what compensation would be payable therefor.

## THE PROCEEDINGS IN THE TRIAL COURT

On November 14, 1994, Mr. Ramsey filed suit against Messrs. Burkhalter and Ryan.

On April 10, 1995, Ramsey & Burkhalter, P.C., was added and the issues were referred to the Master. In December 1995, January, February and March 1996, the Master conducted hearings. On January 31, 1997, the Master filed a 10-page report containing 18 findings including the following:

Master Finding: The parties stipulated at the hearing that the 1990 Founding Stockholders Agreement applies should a written agreement between the parties be relevant to an issue. The parties also agree that Frank Ryan was to be treated as a Founding Stockholder although he did not sign the 1990 Agreement and although his salary was not formally set by addendum.

- - - -

The Agreement provides that:

4.      Each partner should have at least 1000 realized hours each year. If one does not reach this level, his salary may be reduced in a ratio percentage in which his realized hours are less than this minimum. ... This paragraph requirement for realized time will not be unduly enforced, but will be weighed by the partners or the Executive Committee to determine whether a partner is complying with the requirement and if a salary adjustment should be made.

The Agreement also discusses possible bonuses to be added to salary calculations. All references to hours and to salary or bonuses use the term "realized" billings, which means hours charged and paid, not just hours which were chargeable.

- - - -

Equity ownership on the other hand, was fixed. The parties agreed that each partner is a one-third owner of all equity in the business.

- - - -

The stockholders of Ramsey and Burkhalter insured against illness or disability through the professional corporation. The Agreement states:

### ARTICLE 7 ILLNESS OR DISABILITY

In the event of a partner's illness or disability, he shall be entitled to his basic salary for the first six months of that period and then ½ his basic salary for the second six months. In the event that his medical records indicate continued disability, he may voluntarily withdraw or be terminated from the partnership (upon a vote of 85% of the remaining partners). In the event that he has neither withdrawn or terminated, he will not received [sic] further compensation until he returns to full time employment with the firm, but he will continue to be entitled to bonuses under Article 4 and equity share of profits.

The Master finds that Mr. Ramsey was disabled or ill during all of 1994. He is not entitled to additional salary above that which he received during 1994.

- - - -

In 1993, the partners orally agreed that Ramsey would be paid approximately $4,000 per month. The other two

-4-

partners would be paid $4,800 per month. (There was no modification of the 1000 realized hours requirement.) Ramsey admits that this arrangement was fair given three different work styles and levels of production at that time. As a result, in 1993, Ramsey was paid $48,249. The other two partners were paid $57,604.

- - - -

The Master finds Mr. Ramsey is not entitled to additional salary for 1994. The section of the Agreement dealing with illness and disability would result in a salary of $43,200 for the year even if the $4800 per month salary is used as the basic salary. This $43,200 figure is calculated as follows:

| | |
|---|---|
| January 1-June 1, 1994: @ 4800 per month | $28,800 |
| July 1994-December 1994 @ $2400 per month | $14,400 |
| | $43,200 |

Mr. Ramsey was paid $43,487.89 in 1994.

- - - -

Master Finding: As Mr. Ramsey was ill or disabled in 1994, and was paid accordingly, no salary adjustments are due.

- - - -

Mr. Ryan testified that he agreed to work for no pay in 1991 and that he was not due a salary until January 1992. Mr. Ryan should not receive compensation or credit for services he rendered in 1991.

- - - -

Neither Mr. Ramsey nor Mr. Burkhalter should expect to receive a salary for 1991.

- - - -

T.C.A. § 48-101-614(a) requires that fair value be assessed "as of the date of death, disqualification, transfer, retirement or termination." The master finds the first formal notification to Mr. Ramsey of the decision that he must withdraw, was dated August 28, 1994. (Exhibit 5)

- - - -

Master Finding: Bobby Ramsey's equity is the fair value of his shares. He is not entitled to additional salary under any of the theories raised in this lawsuit.

- - - -

The balance sheet of July 31, 1994, reflects gross assets of $222,864.69. Most of this number consists of receivables reflecting billed time ($165,368.17). Unbilled receivables are $23,452.12. The realization rate for the firm is 95. 1% ($165,368.17 + $23,452.12) x .951 = $179,568.00 (Exhibit 21). The Master finds therefore, that the true value of the receivables is $179,568.00. Cash in the company at that time totaled $22,308.00. Book value of equipment and furniture owned by Ramsey Burkhalter on July 31, 1994 was $11,152.31 (an appraisal of equipment and furniture was not available to the Master). Security deposits are recorded at $584.00. The sum of the gross tangible assets is therefore, $213,612.00. Liabilities totaled $24,644.07. (Exhibit 10) Net assets are $188,968 because

|                 |            |
|-----------------|------------|
| Gross assets:   | $213,612   |
| Liabilities:    | -   24,644 |
| Net assets:     | $188,968   |

33% of $188,968 = $62,989

The Master finds that by agreement, Mr. Ramsey was assigned $28,848 of the receivables of his clients at full value for each dollar.

- - - -

The Master has reviewed the voluminous transcript carefully. As a result, the Master finds the value of Mr. Ramsey's stock to be one-third of the value of the net assets on July 31, 1994 minus the accounts receivable which were assigned to him by agreement. Ramsey Burkhalter should purchase Mr. Ramsey's stock at the fair value of $34,141.00. As further explanation:

| $62,989.00  | One third net assets        |
|-------------|-----------------------------|
| -28,848.00  | Value of accounts receivable assigned to Mr. Ramsey |
| $34,141.00  |                             |

All parties filed exceptions to the report of the Master. The Trial Judge confirmed the report and made it the judgment of the Court. A motion of the plaintiff for discretionary costs was overruled.

The plaintiff, Mr. Ramsey, appealed and has presented the following issues:

1. Whether the trial court erred in failing to award Bobby Ramsey his unpaid 1991 salary that was designated as being a "normal operating expense" of Ramsey Burkhalter, P.C.

2. In the alternative, whether the trial court erred in failing to award bobby Ramsey additional equity in Ramsey Burkhalter, P.C. based on the undistributed retained earnings in the corporation at the end of 1991.

3. Whether, in addition to an award of his share of the equity in the professional corporation, Bobby Ramsey is also entitled to an award from Ted Burkhalter and Frank Ryan for clients they retained for which he was the source or procuring partner.

The concurrent finding of a Master and Chancellor upon controverted questions of fact is entitled to the weight of the verdict of a jury if there is any evidence to sustain it.

T.C.A. § 27-1-113, In Re: Estate of Tipps, Tenn. 1995, 907 S.W.2d 400; Coats v. Thompson, Tenn. App. 1986, 713 S.W.2d 83.

The dealings between the parties, described above, created a classic procedural situation for a reference to the Master. No error is found in the order creating the reference, which was agreed to by the parties.

The first exception of the plaintiff to the report was that Master found that "a detailed analysis of each client account was not relevant to the value of the stock of the corporation." The Master correctly held that the value of the stock of the corporation was total assets minus total liabilities. In respect to physical assets, it was incumbent upon the parties to prove their version of the value of each asset. Likewise, in respect to the value of the expectation of continued patronage of individual "clients" (good will), it was incumbent upon the parties to prove their version of the value of the expectation of continued patronage of each client. It is too much to expect of a Master to listen to endless details of past dealings with patrons in order to make an estimation of the probability of continuation of and profit from the patronage of each client. The first exception of the plaintiff was not well taken.

The plaintiff's second exception to the Master's report was that it failed to award plaintiff the unpaid 1991 salary. It is uncontradicted that the two initial parties waived their 1991 salaries as a part of their capital contribution to the corporation. Their only hope of recovering this salary was a future distribution of profits or liquidation of stock. There was no distribution of profits, and the liquidation value of the stock was dependant upon the profits and/or losses from year to year preceding the dissolution.

No merit is found in plaintiff's second exception to the report.

Plaintiff's third, and last, exception to the report was that he was not granted an additional salary adjustment due to his disability during that year. The Master's report, quoted above, discussed at length the disability rights of plaintiff, and no error is found therein.

No merit is found in any of the exceptions of plaintiff to the Master's report. In the absence of exceptions to the report of the Master, they cannot be reviewed for the first time on appeal. *Rogers v. Rogers*, 101 Tenn. 428, 47 S.W. 701.

The dealings of the parties with each other do not conform to the popular conception of accountants as artists of exactitude. Their dealings with each other have created for the courts a masterpiece of inexactitude. The result reached by the Master, the Trial Court and this Court represents the best that the inexact science of law can do to resolve the problems created by the parties.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff-appellant and his surety. The cause is remanded to the Trial Court for necessary further proceedings.

**AFFIRMED AND REMANDED**.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE