IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2024 Session

**EMILY RUTH HUGHES v. LUCAS HUGHES**

**Appeal from the Circuit Court for Carter County**
**No. C14472      Suzanne Cook, Judge**
_____

**No. E2023-00952-COA-R3-CV**
_____

In this post-divorce custody and contempt action, the trial court held the defendant father in criminal contempt for violating the parties' permanent parenting plan. The trial court sentenced the father to serve 186 consecutive days in jail. The trial court also limited the father's parenting time with the parties' minor children and awarded the mother her attorney's fees incurred in prosecuting the action. The father timely appealed to this Court, arguing that he lacked adequate notice of the criminal contempt allegations and that the trial court imposed an excessive sentence. The father also argues that the trial court erred in limiting his parenting time under Tennessee Code Annotated section 36-6-406. The issues related to inadequate notice are waived because the father raises those issues for the first time on appeal. Father's argument regarding his parenting time is waived for the same reason. We also conclude that the trial court's sentence for the father's criminal contempt is appropriate under the circumstances and does not amount to an abuse of discretion. Finally, we award the mother her costs and expenses, including reasonable attorney's fees, incurred in defending this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Ricky A. W. Curtis, Blountville, Tennessee, for the appellant, Lucas Hughes.

Solange A. McDaniel, Johnson City, Tennessee, for the appellee, Emily Ruth Hughes.

# OPINION

## BACKGROUND

Emily Hughes ("Mother") and Lucas Hughes ("Father") divorced and entered into a permanent parenting plan in 2019. Mother filed a petition for contempt against Father in the Circuit Court for Carter County ("trial court") on February 27, 2023. Therein, Mother alleged that Father was in contempt of the parties' permanent parenting plan for repeatedly contacting and "continuously harassing" Mother. Mother relied on the following plan provision: "The parties shall operate under a mutual restraining order and shall have no contact with the other except for text messages only relating to parenting their children." The record contains thousands of text messages from Father to Mother in which Father pursues a romantic relationship with Mother. In the messages, Mother repeatedly asks Father to stop, informs Father that their romantic relationship is over, and reiterates that they are only to have contact regarding their two minor children. While a small portion of Father's messages relate to parenting, the overwhelming majority of the messages are Father begging Mother to rekindle a relationship with him. Mother also alleged in her petition that Father talks to the parties' children about the parties' divorce and blames the divorce on Mother.

Father filed a response and counter-motion on April 3, 2023. Father asserted that Mother was in contempt of the parties' parenting plan for, *inter alia*, failing to make decisions jointly with Father and failing to inform him about various of the children's appointments. Father requested that the parties attend mediation and that he be allowed more parenting time with the children, specifically, a fifty-fifty parenting time split with alternating weeks. While Father asked the trial court to "adopt a parenting plan submitted to the Court by Father[,]" he did not file a proposed parenting plan.

The trial court entered an order on May 1, 2023, providing that it held a hearing on the contempt matter on April 4, 2023, but that neither Father nor his counsel appeared. The order further provides that "[Father's] attorney . . . was contacted and stated that neither he nor his client received the Notice of Hearing. [Mother's] attorney requested permission to amend her Motion for Contempt." The trial court reset the hearing to May 15, 2023, and granted Mother permission to amend her contempt petition.

On May 4, 2023, Mother filed an "Amended Motion for Contempt and to Limit Defendant's Parenting Time Pursuant to Tenn. Code Ann. § 36-6-406(d)." Mother asserted in her amended petition that Father should be held in criminal contempt and claimed that Father was sending Mother dozens of text messages on a daily basis and had even texted Mother pornographic pictures. Mother further alleged that Father had been showing up at Mother's place of employment and leaving unwanted gifts on her vehicle. Mother also alleged serious issues with Father's parenting, such as allowing the young minor children

to ride unrestrained in Father's vehicle and refusing to administer one of the children's inhaler when necessary. Mother asked that Father be held in criminal contempt, that his parenting time be limited to supervised visitation pursuant to Tennessee Code Annotated section 36-6-406(d), and that Father be enjoined from discussing the parties' divorce with the children. Mother also requested her reasonable attorney's fees incurred in bringing the contempt action. Mother also filed an answer to Father's counter-petition for contempt, largely denying his allegations.

Father filed a brief answer to the amended petition on May 15, 2023, the same day as the final hearing. In his answer, Father did not allege that he lacked notice of Mother's allegations or that he was not properly served with the amended petition. Rather, Father conceded that

> in an attempt to reconcile the parties' marriage [Father] has contacted [Mother] in violation of the parties['] parenting plan. He understands that if he continues to do so it could possibly lead to some incarceration or an order of protection. [Father] has offered to pay for [Mother's] reasonable attorney fees for the prosecution of this contempt matter.

Father denied, however, that his parenting time should be reduced. Father claimed that "Mother's motion to limit his parenting time was only filed vindictively after he had filed his motion to increase his parenting time." Consequently, Father asked that "Mother's motion for contempt be granted and Father be ordered to pay reasonable attorney fees related to the prosecution of the motion, but not have to pay any attorney fees for the filing of Mother's vindictive motion to limit his parenting time."

The record does not contain a transcript of the May 15, 2023 hearing. The trial court entered an order, however, on June 26, 2023, providing that a hearing occurred on May 15, 2023 at which the parties testified. The order does not mention that Father raised any issues regarding notice or service of process at the hearing. The trial court found that Father did not allege or prove a material change in circumstances warranting an increase in his parenting time, nor did he file a proposed parenting plan; accordingly, his counter-motion for increased parenting time was denied. Regarding Mother's contempt allegations, the trial court found, in pertinent part, as follows:

> Exhibit 2 is a notebook of text communications between the parties beginning July 10, 2021 through February 3, 2023. The pages in the notebook are Bates stamped as numbers 933 through 1628, for a total of 695 pages. The various texts are chronologically organized by date and include timestamps. Exhibit 5 is additional texts between the parties dated February 2, 2023 through March 31, 2023, Bates stamped as pages 1 through 25, also arranged chronologically and including timestamps.

Exhibit 2 and Exhibit 5 demonstrate literally and actually *thousands* of texts, the majority of which were sent by [Father] and which show that an overwhelming number of Father's texts for *years* consistently and plainly violate Section J of the Order because his texts are on matters other than parenting the children. Testimony during the hearing on May 15, 2023 included that this pattern of texting occurred from the time of the divorce, although the earliest ones included in Exhibit 2 begin in July 2021. As shown in Exhibits 2 and 5, Father's texts vary from long soliloquies to short texts sent in rapid fire succession over the course of seconds and minutes and hours. The theme of all of the texts (the parties are just shy of four years post-divorce) is Father begging, threatening or pleading with Mother to reconcile and that he will win her over, and then when no response is given by Mother, becoming antagonistic, accusatory, and insulting toward Mother. On multiple occasions, Mother texts Father to stop, and reminds him of the Order to text only about the children. Father ignores the same. The Court finds that only a small fraction of Father's texts in Exhibits 2 and 5 are actually about parenting the children.

The trial court also noted that it found Mother's testimony about Father following her credible and ultimately found Father in contempt:

> The Court finds beyond a reasonable doubt that Father willfully failed to comply with the Order on 133 specifically identified occasions and sentences Father to a total of 186 days in jail. Pursuant to Tenn. Code Ann. 40-35-115(b)(7), Father shall serve his sentences for contempt consecutively and is to report to the Carter County Jail on July 1, 2023.

> Further, the Court finds that this sentence is necessary because of Father's lack of respect for the Court's Order or Mother's wishes, the magnitude of Father's behavior, the extent of Father's willful violations (he disregarded the Order, he disregarded Mother's unequivocal communications to stop, he ignored a letter from counsel to cease and desist, and he disregarded his counsel's sound advice), the necessity of terminating Father's contumacious behavior, and the importance of deterring Father from such behavior in the future.

The trial court also limited Father's parenting time, explaining as follows:

Tenn. Code Ann. § 36-6-406(d) states that "[a] parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provision of a parenting plan, if any of the following limiting factors are found to exist after a hearing: . . . (2) An

- 4 -

emotional or physical impairment that interferes with the parent's performance of parenting responsibilities . . . (5) The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development; . . . (8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child."

The Court finds that Father has an emotional impairment that interferes with his parenting responsibilities. Father has stalked Mother for years, going so far as to use their children to deliver unwanted gifts to Mother. Additionally, the sheer volume and frequency of Father's texts to Mother would require him to be on his phone almost constantly throughout the day, preventing him from being available to his children and capable of performing his parenting responsibilities. The Father's behavior displays a pattern of conduct that is abusive to Mother, with the parties' children being used as pawns by Father to manipulate Mother. Father's abusive use of conflict and emotional impairment creates a danger of damage to the children's psychological development and is adverse to the best interests of the children. The Court, pursuant to Tenn. Code Ann. § 36-6-406, is limiting Father's parenting time to every other weekend from Friday pick up from school or 6:00 pm on non-school days to Sunday at 6:00 pm.

The trial court also awarded Mother $5,379.56 in attorney's fees and expenses. Father timely appealed to this Court.[1]

**ISSUES**

Taken verbatim from his appellate brief, Father raises the following issues on appeal:

I. Whether Father had proper Notice to appear on May 15, 2023 to defend any action whatsoever?

II. Whether Father had proper Notice to appear on May 15, 2023 to defend a Criminal Contempt prosecution?

III. Whether the Criminal Contempt sentence imposed by the Trial Court was appropriate?

IV. Whether the Trial Court had any authority to modify the Permanent Parenting Plan on May 15, 2023?

---

[1] Following a motion by Father, the trial court stayed Father's sentence pending appeal.

**DISCUSSION**

*Notice of criminal contempt*

Father's first two issues on appeal both address whether he received adequate notice of the allegations against him. Indirect criminal contempt "may be punished only after the accused has been given notice and an opportunity to respond to the charges at a hearing." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996) (citing *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)).

As this Court has previously explained:

> Sufficient notice meeting the requirements of due process must be given as a prerequisite to a court's authority to punish a party for criminal contempt committed outside the presence of the court. *Storey v. Storey*, 835 S.W.2d 593, 599–600 (Tenn. Ct. App. 1992). Under Tenn. R. Crim. P. 42(b), a person facing a criminal contempt charge must "be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citation omitted). "Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous." *Id.* at 13–14.
>
> [*McLean v.*] *McLean*, [No. E2008-02796-COA-R3-CV,] 2010 WL 2160752, at *5 [(Tenn. Ct. App. May 28, 2010)].

*McClain v. McClain*, 539 S.W.3d 170, 219 (Tenn. Ct. App. 2017). Father argues on appeal that he did not have sufficient time to prepare a defense to criminal contempt after Mother filed her amended petition. However, this argument is waived because it is raised for the first time on appeal. "It is well settled that issues not raised at the trial cannot be raised for the first time on appeal." *Ussery v. City of Columbia*, 316 S.W.3d 570, 587 (Tenn. Ct. App. 2009) (citing *Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687 (Tenn. Ct. App. 1993)). Father not only failed to make an inadequate notice argument in the trial court but conceded that he was in criminal contempt of the parties' permanent parenting plan in his written response to Mother's amended petition. Inasmuch as Father admitted he was in contempt and acknowledged that he may face incarceration as a result, Father's claim that he was not sufficiently apprised of the allegations against him strains credulity.

At oral argument in this matter, Father's counsel appeared to argue that issues of notice are not subject to the typical rules of waiver because criminal contempt is controlled by Tennessee Rule of Criminal Procedure 42(b). While Father is correct that Rule 42(b) applies here, Father cites no legal authority in his brief, nor did our research reveal any, providing that Rule 42(b) somehow exempts an alleged contemnor from having to raise issues of inadequate notice in the trial court. On the contrary, both this Court and the Court of Criminal Appeals have held, under analogous circumstances, that issues regarding inadequate notice of criminal contempt may be waived on appeal when not properly preserved in the lower court. *See Boren v. Rousos*, No. M2014-02504-COA-R3-CV, 2015 WL 7182141, at *5 (Tenn. Ct. App. Nov. 13, 2015) ("Father also contends he was not put on notice in accordance with Tenn. R. Crim. P. 42(b) that Mother was seeking to hold him in criminal contempt . . . The record does not indicate, and Father does not contend in his brief, that he raised an issue regarding inadequate notice at trial. The appellate court may treat issues that are raised for the first time on appeal as waived."); *State v. Thigpen*, No. M2018-00118-CCA-R3-CD, 2020 WL 755178, at *6 (Tenn. Crim. App. Feb. 14, 2020) ("The Defendant next asserts that he was not given proper notice of the contempt charges. However, trial counsel did not challenge the adequacy of notice at the hearing. Issues raised for the first time on appeal are generally waived.").

Consequently, Father's issues regarding inadequate notice are waived, and he is not entitled to relief on this basis.

*Consecutive sentencing*

Father next claims that "the trial court's sentence was incorrect." The trial court ordered Father to spend 186 consecutive days in jail, which Father argues is excessive. He also avers that the trial court did not appropriately analyze the statute applicable to consecutive sentencing. We disagree and conclude that the trial court's sentence is warranted under the circumstances.

"The punishment for contempt may be by fine or by imprisonment, or both." Tenn. Code Ann. § 29-9-103(a). Further, "[w]here not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00)." *Id.* § 29-9-103(b). While a jail sentence for criminal contempt may be ordered to run consecutively or concurrently in the trial court's discretion, "there is a presumption in favor of concurrent sentencing as distinguished from consecutive sentencing." *Trezevant v. Trezevant*, 568 S.W.3d 595, 639 (Tenn. Ct. App. 2018) (citing *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987)). A "court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:"

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt;

(8) The defendant is convicted of two (2) or more offenses involving sexual exploitation of an elderly or vulnerable adult with consideration of the aggravating circumstances arising from the relationship between the defendant and victim, the nature and scope of the sexual acts, and the extent of the physical and mental damage to the victim;

(9) The defendant was incarcerated at the time of the offense and is convicted of an offense enumerated in § 39-16-202(a)(2); or

(10) The defendant is convicted of two (2) or more offenses involving more than one (1) victim, irrespective of whether the multiple offenses were part of a single criminal episode, and the court finds that a separate consecutive sentence for each offense is in the interest of justice.

Tenn. Code Ann. § 40-35-115(b). Even so, while "statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be 'justly deserved in relation to the seriousness of the offenses,' and 'no greater than that deserved' under the circumstances." *Simpkins v. Simpkins*, 374 S.W.3d 413, 425 (Tenn. Ct. App. 2012) (quoting *In re Sneed*, 302 S.W.3d 825, 828 (Tenn. 2010) (brackets and internal citations omitted)). As such, when a sentence for contempt is excessive, we have the authority to modify that sentence. *Id.* at 425–26 (citing *Thigpen v. Thigpen*, 874 S.W.2d 51, 54 (Tenn. Ct. App. 1993)).

In *Simpkins*, for example, this Court determined that a sentence of 140 days in jail, to be served consecutively, was excessive in light of the fact that the only factor weighing against the contemnor was the finding of contempt. *Id.* at 425. We modified the sentence to 49 days. *Id.* at 426. On the other hand, in *Trezevant*, we upheld a trial court's decision sentencing a contemnor consecutively, noting his "egregious behavior" and reasoning that "nothing in the trial court's order of sentencing [was] inconsistent with the statutory and case law directives" regarding contempt sentencing. 568 S.W.3d at 640. We also noted in *Trezevant* that "[t]his Court has previously upheld consecutive sentencing when the only statutory factor present in the case was that the defendant had been sentenced for contempt." *Id.* (quoting *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *4–5 (Tenn. Ct. App. Oct. 22, 2015)). Ultimately, "[t]he determination of whether to require [a contemnor] to serve his sentences concurrently or consecutively is a matter left to the sound discretion of the trial court." *Id.* at 638.

Here, the trial court did not abuse its discretion in ordering Father to serve his jail sentence consecutively, notwithstanding the fact that the only factor from section 40-35-115 weighing against Father is the contempt finding itself. As the trial court aptly noted, Father's behavior is both egregious and disturbing. Father does not dispute on appeal that he sent Mother thousands of inappropriate messages, spanning several years, in violation of a valid court order. These messages, which span several volumes of technical record, are harassing and abusive in nature and even include pornographic material. As the trial court points out in its final order, "[t]he theme of all of the texts . . . is Father begging, threatening or pleading with Mother to reconcile and that he will win her over, and then when no response is given by Mother, becoming antagonistic, accusatory, and insulting toward Mother." The record not only supports this finding but also shows that Father did not cease his behavior after numerous, repeated requests from Mother, a cease and desist letter from Mother's counsel, or even advice from Father's own counsel. Simply put, the record in this case reflects that Father would not stop his behaviors without serious court intervention. Although Father correctly notes that the trial court did not fully discuss all of the statutory factors found at section 40-35-115 in its final order, "nothing in the trial court's order of sentencing [] is inconsistent with the statutory and case law directives outlined above." *Trezevant*, 568 S.W.3d at 640. In light of Father's actions, his consecutive sentence is deserved and wholly supported by the record.

The trial court did not abuse its discretion in sentencing Father to 186 days in jail, to be served consecutively. We affirm the trial court's ruling in this regard.

*Father's parenting time*

Father's final issue on appeal addresses Mother's request that the trial court limit Father's parenting time with the parties' minor children pursuant to Tennessee Code Annotated section 36-6-406(d). This statute provides, as relevant:

> (d) A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:
>
> (1) A parent's neglect or substantial nonperformance of parenting responsibilities;
>
> (2) An emotional or physical impairment that interferes with the parent's performance of parenting responsibilities as defined in § 36-6-402;
>
> (3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;
>
> (4) The absence or substantial impairment of emotional ties between the parent and the child;
>
> (5) The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development;
>
> (6) A parent has withheld from the other parent access to the child for a protracted period without good cause;
>
> (7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or
>
> (8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

Tenn. Code Ann. § 36-6-406(d)(1)–(8).

To reiterate, the trial court found that "Father has an emotional impairment that interferes with his parenting responsibilities" and that Father displays an abusive pattern of

behavior toward Mother. Father does not dispute these findings,[2] but rather he argues that the trial court should not have applied Tennessee Code Annotated section 36-6-406 at all. According to Father, the exclusive avenue for limiting Father's parenting time is a modification action under Tennessee Code Annotated section 36-6-405. In his brief, Father claims that "the statute on which [Mother] relies to avoid complying with filing a Petition to Modify does not apply" and that "Tenn. Code Ann. § 36-6-406(d) allows a Court to limit a parent's co-parenting time when **IMPLEMENTING** a Temporary or Permanent Parenting Plan, but not to **MODIFYING** a Parenting Plan already in place."

Father's arguments, like his arguments regarding inadequate notice, are being raised for the first time on appeal. Mother requested the trial court limit Father's parenting time in her amended petition, to which Father responded. Father did not argue in his response that Mother relied on the wrong statute or that section 36-6-406 is inapplicable. Instead, Father claimed that "Mother's motion to limit his parenting time was only filed vindictively after he had filed his motion to increase his parenting time." For relief, Father asked that the parties be ordered to mediate regarding their parenting time.

Accordingly, Father poses the argument that section 36-6-406 is inapplicable for the first time in this Court, and "issues not raised at the trial cannot be raised for the first time on appeal." *Ussery*, 316 S.W.3d at 587 (citing *Lavergne*, 872 S.W.2d at 687). Consequently, Father did not properly preserve this argument in the lower court, and it is waived.

### *Mother's attorney's fees*

Finally, Mother requests in her appellate brief that she be awarded her "costs and expenses incurred . . . as a result of the appeal." To the extent Mother seeks an award of appellate attorney's fees against Father, Mother should have designated so in her statement of the issues; indeed, failure to do so results in waiver. *See Hyatt v. Adenus Grp., LLC*,

---

[2] Even if he did, the record on appeal contains no transcript of the final hearing or statement of the evidence. We have previously opined that

> this Court "is precluded from addressing an issue on appeal when the record fails to include relevant documents." *State v. Zirkle*, 910 S.W.2d 874, 884 (Tenn. Ct. Crim. App. 1995). Without an adequate transcript or statement of the evidence, "this Court must presume that every fact admissible under the pleadings was found or should have been found in the appellee's favor." *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). The failure of the appellant to ensure that an adequate transcript or record on appeal is filed in the appellate court constitutes an effective waiver of the appellant's right to appeal. *See, e.g.*, *In re Estate of Tipps*, 907 S.W.2d 400, 402 (Tenn. 1995).

*Chiozza v. Chiozza*, 315 S.W.3d 482, 492 (Tenn. Ct. App. 2009).

656 S.W.3d 349, 377 (Tenn. Ct. App. 2022) ("[D]ue to Appellee's failure to designate his request for attorney's fees and interest as an issue on appeal, such request is waived."); *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 411 (Tenn. 2006) (explaining that "[a]n award of attorney's fees generated in pursuing the appeal is a form of relief" and must thus be presented to the appellate court in the statement of the issues). Nonetheless,

> [w]hen it appears *to any reviewing court* that the appeal from any court of record was frivolous or taken solely for delay, *the court may, either upon motion of a party or of its own motion*, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (emphasis added). "A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citing *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). When a "reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record[,]" the appeal may be "deemed frivolous because it has no reasonable chance of succeeding." *Id.* (citing *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984)). On one hand, section 27-1-122 "must be interpreted and applied strictly so as not to discourage legitimate appeals . . . ." *Davis*, 546 S.W.2d at 586. On the other hand, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* Given the competing considerations, whether to award damages under section 27-1-122 rests soundly within the reviewing court's discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (citing *Whalum v. Marshall*, 224 S.W.3d 169, 180–81 (Tenn. Ct. App. 2006)).

Here, Mother should have requested her costs and expenses in the statement of the issues in her appellate brief, as opposed to just the body of the argument. Nonetheless, we conclude on our own motion, *see* Tenn. Code Ann. § 27-1-122, that Mother is entitled to recover her costs and expenses, including her reasonable attorney's fees, incurred in this appeal. Father's behavior is egregious and has resulted in significant expenses for Mother. Father harassed Mother for years and continued his contemptuous behavior even after Mother initiated this action in the trial court. Father then conceded in a filing to the trial court that he was in criminal contempt and even acknowledged that he faced incarceration or an order of protection as a result of his actions. When Father received the punishment to which he conceded he was subject, he asked the trial court to stay his sentence and filed this appeal. And, as addressed at length already, all but one of Father's issues are raised for the first time on appeal and should have been argued in the trial court. Moreover, Father did not include a transcript of the final hearing or a statement of evidence in the record on appeal.

Under all of these circumstances, this appeal had no reasonable chance of success, and Mother should not have to bear the resultant "expense and vexation[.]" *Davis*, 546 S.W.2d at 586. Although we acknowledge that damages under section 27-1-122 should be awarded sparingly, they are warranted under the very narrow and particular facts of the present case. *See id.*, 546 S.W.2d at 586 (awarding costs and expenses, including attorney's fees, to the appellee by our Supreme Court's own motion). Accordingly, Mother is awarded her costs and expenses, including her reasonable attorney's fees incurred in this appeal, in an amount to be determined upon remand. The trial court's judgment is affirmed in all respects.

## CONCLUSION

The judgment of the Circuit Court for Carter County is affirmed, and costs on appeal are assessed to the appellant, Lucas Hughes, for which execution may issue if necessary. This case is remanded for proceedings consistent with this opinion.

_____
KRISTI M. DAVIS, JUDGE